COMMONWEALTH vs. SHERRE B. THETONIA.

No. 88-P-1379.

Plymouth. May 16, 1989. — September 19, 1989.

Present: BROWN, KAPLAN, & DREBEN, JJ.

*Practice, Criminal,* Waiver of trial by jury. *Deriving Support from Prostitution.* Statute, *Construction. Words,* "Pimp."

In a criminal case, the finding of guilty was set aside where the record reflected no colloquy between the judge and the defendant regarding the defendant's waiver of a jury trial. [783]
In a criminal proceeding under G. L. c. 272, § 7, inserted by St. 1980, c. 409 ("An Act increasing the penalty for a so-called pimp or purveyor"), a defendant charged with knowingly "deriv[ing] support or maintenance in whole or in part from the earnings or proceeds of [a person's] prostitution," was entitled to a required finding of not guilty, where the evidence of the defendant's activities, namely, that she furnished transportation to a prostitute in exchange for occasional gas money and drugs, did not constitute the actions of a "pimp" as that term is ordinarily used. [785-787]

COMPLAINT received and sworn to in the Brockton Division of the District Court Department on December 4, 1986.

On transfer to the jury session of the Wareham Division, the case was heard by *Antone S. Aguiar, Jr.*, J.

*Eric Brandt,* Committee for Public Counsel Services, for the defendant.

*Linda M. Fleming,* Assistant District Attorney, for the Commonwealth.

DREBEN, J. The Commonwealth concedes that the finding of guilty by a judge must be set aside because the record does not reflect any colloquy between the judge and the defendant regarding her waiver of a jury trial. The concession is well taken. See *Commonwealth* v. *Smith,* 403 Mass. 489, 493 (1988).

The defendant was convicted under G. L. c. 272, § 7, as appearing in St. 1980, c. 409, of "deriv[ing] support or maintenance . . . from the earnings or proceeds of [a person's] prostitution," knowing the person to be a prostitute.[1] She claims that as the statute is directed against pimping, her conduct did not fall within its ambit, and that she was, therefore, entitled to a required finding of not guilty. After examining the statute and reviewing the record, we agree with the defendant and order that judgment be entered for her.

General Laws c. 272, § 7, set forth in the appendix, is meant to deal with the "pimp or purveyor,"[2] and makes the crime a felony. It sets a much more severe penalty than does either G. L. c. 272, § 53, or G. L. c. 272, § 53A, also set forth in the appendix, under which prostitution, a misdemeanor, may be punished.

We look at the evidence in the light most favorable to the Commonwealth. The defendant and a woman whom we shall call Dorothy (a fictitious name) were living together with two other women, Laura and Beth (also fictitious names), in Laura's apartment. Dorothy, as the defendant knew, was a prostitute using her earnings to support a cocaine habit. The defendant had a car and often drove Dorothy to various places. During October, 1988 and much of November, Dorothy usually hitched a ride from other persons to the street where she worked in downtown Brockton. Sometimes, she asked the defendant to drive her downtown and, during that period, the defendant did so about two or three times a week.

Usually, the defendant dropped Dorothy off and left, but a few times, at Dorothy's request, she returned and picked her up. On a few occasions, Dorothy asked the defendant to stay and wait for her in the car. Some other prostitutes had threatened

---

[1] The statute is set forth in full in the Appendix to this opinion.

[2] We infer this purpose from the title of the act, "An Act increasing the penalty for a so-called pimp or purveyor," St. 1980, c. 409. See *Commonwealth* v. *Lightfoot*, 391 Mass. 718, 721 (1984). As put by Judge Learned Hand, the task of statutory interpretation is "the proliferation of purpose." Frankfurter, Some Reflections on the Reading of Statutes, 47 Colum.L.Rev. 527, 529 (1947).

Dorothy's life and she was afraid. She thought that, in the event of an attack, the defendant could either come to her aid or drive her away.

During the last week of November and the first few days of December (both women were arrested on December 3, 1988), Dorothy asked the defendant to wait in her car every night. At this time, Dorothy was making between two and three hundred dollars a night from about five to ten "dates." After each date she returned to the car and put the money in the glove compartment so that it would not be lost if she were attacked or arrested. Dorothy testified that the money was her own and not the defendant's, and that the defendant had "nothing to do with [her] prostitution business."

Dorothy gave the defendant five or ten dollars "every once in a while" as gas money and may have once given her twenty dollars. There was no arrangement to give the defendant money and most of Dorothy's money went to support her cocaine habit, which cost her two hundred dollars a day. Dorothy sometimes gave the defendant some cocaine, but that "really wasn't her drug." There was no testimony that the defendant was a drug addict or had a habit to support.

On December 1, 1988, Officer McClaren of the Brockton police saw the defendant waiting in her car while two other women were "working" the street corner. While he watched, a male subject would stop, one of the two women would go to the defendant's car, have a conversation and then get into the [male's] motor vehicle, "leave for approximately five to ten minutes" and then return to the defendant's car where they would converse with her. On December 3, he saw Dorothy first converse with the defendant and then enter a car, where she engaged in sexual acts with a male subject. After arresting both Dorothy and the male, the officer went to the defendant in her car. She stated she was there to use the telephone, although the officer testified that there is no phone in that parking lot.

The Commonwealth urges that, since the defendant derived a financial benefit from prostitution,[3] her activities fell within

[3] The Commonwealth argues that Dorothy supplied the defendant with drugs as well as occasional gas money. The evidence as to drugs was mar-

the pimping statute. She aided and abetted Dorothy by driving her to and from work and waiting for her while she plied her trade.

These activities, however, do not constitute the actions of a "pimp" as the term is ordinarily used. In Black's Law Dictionary 1033 (5th ed. 1979), "pimp" is defined as "[o]ne who obtains customers ('tricks') for a whore or prostitute." Similar definitions are found in standard dictionaries.[4] "While the title to an act cannot control the provisions of the statute, the title may be used for the purpose of ascertaining its proper limitations." *Commonwealth* v. *Graham*, 388 Mass. 115, 120 (1983). In the context of its purpose, to punish the "pimp or purveyor," whose activities were considered by the Legislature more egregious than prostitution, we think that the furnishing of transportation and waiting in exchange for occasional gas money and drugs by a friend (male or female) does not come within the prohibition of "deriv[ing] support or maintenance in whole or in part from the earnings of [a person's] prostitution." The defendant's activities are not what is commonly viewed as pimping.

Moreover, if G. L. c. 272, § 7, were construed to cover any financial benefit, as the Commonwealth suggests, questions of due process might be implicated: the statute may "fail[ ] to provide a reasonable opportunity for a person of ordinary intelligence to know what is prohibited . . . ." *Commonwealth* v. *Jasmin*, 396 Mass. 653, 655 (1986). See *Commonwealth* v. *Love*, 26 Mass. App. Ct. 541, 545 (1988). The literal language of the statute would cover persons who sold food and clothing to a prostitute and would also cover the acceptance by the mother of a prostitute of a gift from her daughter. Here

ginal. Even if we were to assume that Dorothy often shared drugs with the defendant, our result would not be different.

[4] In Webster's Third New International Dictionary 1717 (1971), pimp is defined as: "1 a: one who panders or procures; esp.: a man who solicits for a prostitute or a house of prostitution and receives compensation therefor from the prostitute or the patron   b: a man who cohabits with a prostitute, lives off her earnings, and often solicits for her — called also cadet."

In the American Heritage Dictionary of the English Language 994 (1976), "pimp" is defined as: "a procurer; pander. — intr. v. pimped, pimping."

the defendant at most could be viewed as aiding and abetting Dorothy's activities, and perhaps could also be charged as a joint venturer with Dorothy, but she did not, we conclude, engage in pimping.

We decline to adopt the literal construction ("financial benefit") urged by the Commonwealth. See *Lexington* v. *Bedford*, 378 Mass. 562, 570 (1979) ("a literal construction of statutory language will not be adopted when such a construction will lead to an absurd and unreasonable conclusion"). Courts elsewhere, albeit in construing somewhat different statutory language, support by implication the result we have reached. See *State* v. *Jones*, 51 Mont. 390, 393 (1915); *People* v. *Fegelli*, 163 A.D. 576, 579 (N.Y. 1914). Cf. *State* v. *Lund*, 75 Utah 559, 563-564 (1930); *State* v. *Columbus*, 74 Wash. 290, 297 (1913); *State* v. *Crane*, 88 Wash. 210, 212 (1915).

The judgment is reversed, and the finding is set aside. A judgment of not guilty is to be entered.

*So ordered.*

APPENDIX.

General Laws c. 272, § 7, as appearing in St. 1980, c. 409, provides: "Whoever, knowing a person to be a prostitute, shall live or derive support or maintenance, in whole or in part, from the earnings or proceeds of his prostitution, from moneys loaned, advanced to or charged against him by any keeper or manager or inmate of a house or other place where prostitution is practiced or allowed, or shall share in such earnings, proceeds or moneys, shall be punished by imprisonment in the state prison for a period of five years and by a fine of five thousand dollars.

"The sentence of imprisonment imposed under this section shall not be reduced to less than two years, nor suspended, nor shall any person convicted under this section be eligible for probation, parole, or furlough or receive any deduction from his sentence for good conduct or otherwise until he shall have served two years of such sentence. Prosecutions commenced under this section shall not be continued without a finding nor placed on file."

General Laws c. 272, § 53, as appearing in St. 1983, c. 66, § 1, provides: "Common night walkers, common street walkers, both male and female, common railers and brawlers, persons who with offensive and disorderly acts or language accost or annoy persons of the opposite sex, lewd,

wanton and lascivious persons in speech or behavior, idle and disorderly persons, disturbers of the peace, keepers of noisy and disorderly houses, and persons guilty of indecent exposure may be punished by imprisonment in a jail or house of correction for not more than six months, or by a fine of not more than two hundred dollars, or by both such fine and imprisonment."

General Laws c. 272, § 53A, as inserted by St. 1983, c. 66, § 2, provides: "Any person who engages, agrees to engage, or offers to engage in sexual conduct with another person in return for a fee, or any person who pays, agrees to pay or offers to pay another person to engage in sexual conduct, or to agree to engage in sexual conduct with another natural person may be punished by imprisonment in a jail or house of correction for not more than one year, or by a fine of not more than five hundred dollars, or by both such fine and imprisonment."