## Commonwealth vs. Ziad Arafat Alammani.

Norfolk. March 3, 2003. - June 24, 2003.

Present: Marshall, C.J., Greaney, Ireland, Cowin, Sosman, & Cordy, JJ.

*Practice, Criminal,* Required finding, Instructions to jury, Argument by prosecutor, Assistance of counsel. *Homicide. Evidence,* Hearsay, State of mind, Relevancy and materiality, Consciousness of guilt, Cumulative evidence, Photograph. *Constitutional Law,* Assistance of counsel.

At the trial of an indictment for manslaughter and four related indictments, the judge properly denied the defendant's motion for required findings of not guilty, where the jury could have reasonably found, based on the evidence, that the fatal brain injury to the victim occurred while the defendant retained exclusive control over her. [608-609]

At the trial of an indictment for manslaughter, the judge's instructions to the jury as read from the model instructions on voluntary manslaughter were adequate and did not fail to properly define intent. [609-610]

The judge at the trial of an indictment for manslaughter and four related indictments did not err in excluding two hearsay statements made by the infant victim's mother, nor did the exclusion of such statements prejudice the defendant in any way, where the statements, which were offered to demonstrate the mother's malicious state of mind toward the infant, were ambiguous, where other statements could have also been admitted which would have dispelled any inference of ill will from the excluded statements, and where the statements were merely cumulative of facts of which the jury were already aware. [610-612]

The judge at a trial of an indictment for manslaughter, two indictments charging assault and battery on a child, and two indictments charging wanton and reckless permitting of assault and battery on a child was well within his discretion in admitting photographs of the victim as she was admitted to the hospital and autopsy photographs, where it was appropriate for the jury to see the victim's injuries to determine both the severity of the injuries and the intent with which they may have been inflicted. [612]

At the trial of an indictment for manslaughter and four related indictments, the prosecutor's use of the defendant's middle name, allegedly in an attempt to appeal to ethnic prejudice, did not create a substantial likelihood of a miscarriage of justice. [612-613]

A criminal defendant failed to demonstrate that his trial counsel rendered ineffective assistance by making a reasonable tactical decision not to present evidence of the psychological history of the victim's mother; by arguing a theory of the time the incident occurred that was supported by the evidence; by not requesting a consciousness of guilt instruction for conflicting statements made by a third party to police; or by failing to object to a slight inaccuracy in the Commonwealth's closing argument. [613-615]

INDICTMENTS found and returned in the Superior Court Department on December 11, 1997.

The cases were tried before *Ralph D. Gants*, J., and a motion for a new trial, filed on March 21, 2001, was heard by him.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*John F. Dalsey* for the defendant.

*Ellen McCusker Devlin*, Assistant District Attorney, for the Commonwealth.

*Timothy J. Cruz, Kevin M. Burke, & Elizabeth Scheibel*, District Attorneys, & *Robert C. Thompson*, Assistant District Attorney, for District Attorney for the Plymouth District & others, amici curiae, submitted a brief.

*Debra Krupp*, Committee for Public Counsel Services, for Committee for Public Counsel Services, amicus curiae, submitted a brief.

IRELAND, J. The defendant was tried before a jury on an indictment charging manslaughter, and four related indictments under G. L. c. 265, § 13J,[1] for the death of his infant daughter. He was found guilty of voluntary manslaughter, as well as wanton and reckless permitting of an assault and battery on a child causing substantial injury, and wanton and reckless permitting of an assault and battery on a child causing injury. The defendant's postconviction appeal was stayed pending his motion for a new trial, which was denied. We transferred the defendant's appeal from his convictions, consolidated with his appeal from the denial of his motion for a new trial, to this court on our own motion. The defendant now makes several arguments that his convictions should be reversed, or that he is entitled to a new trial. In turn, he argues that (1) the trial judge erroneously denied his motion for required findings of not guilty, and the evidence was insufficient as a matter of law to sustain the convictions; (2) the voluntary manslaughter instructions, as ordered by a single justice of this court, were erroneous; (3) the judge erroneously excluded hearsay testimony, which caused prejudice to the defendant; (4) the judge erroneously allowed the Commonwealth to admit graphic photographs of the victim;

---

[1]Two indictments pertained to assault and battery on a child, and two pertained to wanton and reckless permitting of assault and battery on a child.

(5) the defendant's right to a fair trial was violated by the prosecutor's use of the defendant's middle name; and (6) he was denied effective assistance of counsel. Because none of the defendant's arguments is meritorious, we affirm the convictions.

*Facts.* The facts as the judge found them in his memorandum of decision denying the defendant's motion for a new trial do not substantially differ from the facts as a jury could have found them. At the time of the incident, the defendant and the victim's mother (Lucia Alba) were residing with their two children in a local hotel in Walpole. At around midnight on September 9, 1999, a hotel guest heard the two month old victim crying. After attempts to comfort the victim failed, the victim's mother gave her to the defendant, who was to take the victim for a walk while her mother would try to sleep. The defendant took the victim outside, went to a public telephone, and was seen by a Walpole police officer holding the baby between 1 A.M. and 1:30 A.M. (September 10). The hotel resident whose room was adjacent to the defendant's family's recalled hearing an infant screaming from approximately midnight to 1:30 A.M., at which time the screaming abruptly stopped. Also during that time, the hotel guest recalled hearing two or three bangs on two separate occasions. At some point in the early morning hours after the victim had stopped crying, the defendant placed the victim in her car seat to sleep and also fell asleep himself.

At about 6:30 A.M., the defendant woke the victim's mother and asked whether she had breast fed the victim. She replied that she had not, to which the defendant stated something was wrong with the victim, and then asked the mother to dial 911. The victim was not breathing. The defendant performed CPR on the victim until relieved by the police. The victim was seen in a hospital emergency room by Dr. Kelly Knowles, who noted that the victim had a pulse, but was not breathing and was acidotic due to a lack of oxygen. The victim died the next day.

The victim's body exhibited signs of substantial trauma that was at least ten days old. Despite these numerous injuries, according to expert testimony the ultimate cause of death was at least thirty seconds of severe shaking. The shaking caused retinal hemorrhaging, swelling and bleeding in the brain, and brain stem trauma that caused her rapidly to lose the ability to breathe.

*Discussion.* Because this is a consolidated appeal, we review the judge's denial of the defendant's motion for a new trial to determine whether the judge abused his discretion or whether "it appears that justice may not have been done," *Commonwealth* v. *Russin*, 420 Mass. 309, 318 (1995), quoting Mass. R. Crim. P. 30 (b), 378 Mass. 900 (1979). We also review the individual claims of error on direct appeal.

1. *Defendant's motion for required findings of not guilty.* When a defendant challenges the denial of a motion for required findings of not guilty and the general sufficiency of the evidence, we consider all the evidence in the light most favorable to the Commonwealth. See, e.g., *Commonwealth* v. *Fisher*, 433 Mass. 340, 342-343 (2001).

The defense theory at trial was that the victim's mother, not the defendant, was the perpetrator of the fatal injuries inflicted on the victim. The case was not tried on a joint venture theory. The defense thus attempted to demonstrate that Alba had equal access and opportunity to inflict the injuries. The Commonwealth's theory was that the fatal shaking injury happened around 1:30 A.M., the time a hotel guest testified that the victim's crying abruptly ceased. The defendant admits to having exclusive control of the victim at or around this time, and was even seen at that time by a Walpole police officer walking with the victim in the common area of the hotel.

The defendant's main argument on appeal is that the medical testimony indicated that, following the traumatic shaking, the victim would have "immediately ceased breathing and died." According to the defendant, the fact that the victim's heart was still beating when she arrived at the hospital indicates that the shaking took place shortly before the 911 call, raising the possibility that the victim's mother caused the fatal injury.

The medical examiner's testimony was, "What happened . . . was [the victim's] brain stem was damaged [by violent shaking]. The brain stem is responsible for breathing. She would have rapidly lost the ability to breathe." However, Dr. Patrick Barnes, a pediatric neuroradiologist, estimated that at 8 A.M. the brain injury was from three to twelve hours old. Additionally, testimony from pediatrician Dr. Robert M. Reece, director of the Massachusetts Society for the Prevention of Cruelty to

Children's Institute for Professional Education, established that brain swelling in infants may immediately result in a reduction of oxygen to the brain, but never testified that death would be immediate. With this evidence, coupled with the cessation of crying around 1:30 A.M., the jury could have reasonably found that the brain injury to the victim occurred while the defendant retained exclusive control over her during the early morning hours of September 10. The medical examiner's testimony did not compel the conclusion that the fatal shaking occurred at a time when the mother had equal access to the victim. The denial of the defendant's motion for required findings of not guilty was proper, and the evidence was sufficient to sustain the jury verdicts.[2]

2. *Voluntary manslaughter instructions.* The defendant argues that the Model Jury instructions on Homicide are erroneous because in situations where a defendant is not charged with murder, the element of intent is never properly defined.[3] However, "[o]n an indictment charging voluntary manslaughter, the Commonwealth need only prove the elements set forth . . .

---

[2]The defense also challenges the sufficiency of the evidence as to the permitting assault and battery on a child. Considering the scope and breadth of injuries to the victim, there was sufficient evidence for these convictions as well.

[3]The judge's initial instruction to the jury on the charge of voluntary manslaughter deviated from the model jury instructions. In his instructions, which were objected to by the Commonwealth, the judge incorporated the so-called three prongs of malice as satisfying the element of intent described in his voluntary manslaughter charge. The Commonwealth filed a petition pursuant to G. L. c. 211, § 3, and the single justice of this court ordered that the jury be read the model instructions on voluntary manslaughter. As a result, the judge informed the jury to disregard his earlier instructions, and read to the jury the model instructions on voluntary manslaughter.

The model jury instructions recommend that to prove the crime of voluntary manslaughter, the Commonwealth must prove beyond a reasonable doubt two elements: 1. "That the defendant intentionally inflicted an injury or injuries likely to cause death upon the deceased which caused his death." 2. That "the defendant acted unlawfully." Model Jury Instructions on Homicide 32 (1999). In his initial instructions, the judge indicated that there were three elements: "First, that the defendant killed [the victim]. Second, that the killing was unlawful and unexcused and was not accidental. And third the killing was committed intentionally as I will define it. . . . [T]he third element. . . can be satisfied in any one of three ways." The judge went on to describe "intentional" in the same language as the three prongs of malice are commonly defined.

in the Model Jury Instructions on Homicide 31-33 (1999)." *Commonwealth* v. *Ware*, 438 Mass. 1014, 1015 (2003).[4] As originally given, the judge's voluntary manslaughter instructions effectively required the Commonwealth to prove murder in the second degree. See note 3, *supra.* However one might define the intent necessary for voluntary manslaughter, it does not equate with the element of malice necessary for murder. The model instructions are adequate, and there was no error in the judge's instructions to the jury as ordered by the single justice.

3. *Hearsay testimony.* The defendant claims that the judge erroneously excluded two hearsay statements made by the victim's mother while she was being questioned by police at the hospital shortly after the family's arrival. We review the rulings to determine whether there was prejudicial error to warrant a new trial. See *Commonwealth* v. *Vinnie*, 428 Mass. 161, 172, cert. denied, 525 U.S. 1007 (1998).

In one statement, the mother claimed not to have "bonded" with the victim as she had with her older child. In the other statement, she walked into the room where the defendant was being questioned, hugged him, and said, "I'm sorry." The defendant argues that these two statements are admissible to show the mother's state of mind. He contends that her state of mind was relevant because she exhibited consciousness of guilt through her other inconsistent statements to police regarding the

---

[4]The defendant also contends that at trial, defense counsel was unaware that the charge of voluntary manslaughter would be placed before the jury. In response to the defendant's objection toward the close of evidence, the judge found that, while there may have been ambiguity on the part of the prosecution as to whether the charge would be voluntary or involuntary manslaughter, the defendant suffered no prejudice. The distinction between voluntary and involuntary manslaughter is whether the infliction of injury was intentional. The defense theory at trial was that he never shook or beat the victim at all. In addition, the defendant relies on the bill of particulars to buttress his claim that the Commonwealth engaged in deceit. The bill of particulars states: "In Indictment 104647 it is alleged that the defendant . . . did . . . assault and beat [the victim], and by such assault and beating did kill [the victim]." Nothing in the bill of particulars supports the defendant's contention that involuntary manslaughter was the charged offense. Finally, the defendant has never contended that the evidence did not warrant the voluntary manslaughter instruction, nor has he shown prejudice as a result of the instruction.

source of the victim's multiple injuries.[5] He asserts that the two statements (she never "bonded" with the victim, and "I'm sorry") demonstrated her malicious state of mind toward the infant and implicated her as the perpetrator of the violent shaking. The judge ruled the statements were hearsay and fell under no exception. He recognized it was a unique situation where a prior out-of-court statement by a third party expressing animosity toward the victim is sought to be admitted to implicate the third party.[6] These out of court statements, however, are typical of third-party culprit evidence. "We have suggested that hearsay may be admitted, in the judge's discretion, to show that a third party might have committed the crime for which the defendant is being tried provided the evidence is otherwise relevant, will not tend to prejudice or confuse the jury, and there are other 'substantial connecting links' to the crime." *Commonwealth* v. *O'Brien*, 432 Mass. 578, 589 (2000), citing *Commonwealth* v. *Rosa*, 422 Mass. 18, 23 (1996) (hearsay inadmissible to show that third party may have committed crime unless certain criteria are met). A judge's determination of relevancy will not be set aside absent abuse of discretion unless justice requires a different result. See *Commonwealth* v. *Rosa*, *supra.*

The defendant's argument that the victim's mother's conflicting statements to police officers indicated a consciousness of guilt, thereby rendering the two excluded statements relevant, is not persuasive due to the ambiguity of the two statements themselves. The first statement (stating her lack of "bond" with the victim) does no more than indicate the mother's distinction between her relationship with her first-born child and the victim. It does not suggest animosity or dislike that might lead to violence. The second statement, "I'm sorry," is vague as to

---

[5]The jury heard that the mother told police various stories regarding the possible origin of the victim's bruising. At one point she claimed that her other child fell on the victim. She also told police that skin bruised easily in her family, and that her older child grabbed the victim by the arm.

[6]The judge noted that he was "unaware of any case that stands for the proposition that a prior out-of-court statement by a third party expressing animosity towards the victim becomes admissible under the state of mind exception when the defendant contends that the third party was responsible for the violence against the victim."

what it refers and, in the circumstances, could have had any number of meanings. Additionally, had the statements been admitted, another statement regarding her love for babies, and her desire to have "ten more," would have also been admissible, and would have dispelled any inference of ill will from the other statements. Finally, the defendant was convicted of permitting assault and battery on a child, which by implication demonstrates that the jury believed the mother did in fact abuse the victim at some point prior to the final shaking. With this in mind, these two statements would have been merely cumulative of facts of which the jury were already aware. Failure to admit these statements was not error, nor did their exclusion prejudice the defendant in any way.

4. *Photographs of the victim.* The Commonwealth introduced two sets of photographs of the victim. One set depicted the victim as she was admitted to the hospital, with various tubes attached to her body. The other set were autopsy photographs, depicting external images of the victim.[7] In conjunction with both sets, the judge gave the jury proper instructions pertaining to the permissible use of the photographic evidence. The judge made careful and documented findings that the photographs that were admitted shed light on material issues, such as the severity, nature, and cause of her injuries, as well as the intent of the person who inflicted them. "The question whether the inflammatory quality of a photograph outweighs its probative value and precludes its admission is determined in the sound discretion of the trial judge." *Commonwealth* v. *DeSouza,* 428 Mass. 667, 670 (1999), and cases cited. Given the charges facing the defendant, it was appropriate for the jury to see the injuries to the victim so they could determine both the severity of those injuries and the intent with which they may have been inflicted. The judge was well within his discretion in admitting the photographs.

5. *Prosecutor's use of the defendant's middle name.* The defendant claims that the prosecutor appealed to ethnic prejudice by referring to the defendant using the defendant's middle name,

---

[7]The autopsy photographs were not included in the record before this court. Assuming, arguendo, that the photographs were as described by the defendant, our reasoning remains unchanged.

Arafat, on at least five occasions. He claims the jury may have connected his middle name with the Palestinian leader, Yasser Arafat. Because there was no objection at trial, we treat the issue as waived and review only to consider whether there is a substantial risk of a miscarriage of justice. See *Commonwealth v. Montanez, ante* 441, 443 (2003), citing *Commonwealth v. Whelton,* 428 Mass. 24, 25-26 (1998).

The defendant's middle name was used primarily during examination of witnesses concerning the identification of the defendant, in instances where his middle name may have been relevant. In one instance it was used when questioning the hotel manager, and in another, when questioning the registrar of a college in order to determine the defendant's enrollment status. To the extent that his name was used once or twice during the opening statement or closing argument, we find even if there was error, there is no substantial risk of a miscarriage of justice.

6. *Ineffective assistance of counsel.* Finally, the defendant asserts multiple claims regarding the effectiveness of counsel. In order to establish ineffective assistance of counsel, a defendant must prove both (1) that "there has been serious incompetency, inefficiency, or inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer," and (2) that defense counsel's performance "has likely deprived the defendant of an otherwise available, substantial ground of defence." *Commonwealth v. Saferian,* 366 Mass. 89, 96 (1974). In addition, where "the claim is that defense counsel committed a tactical error, the defendant must demonstrate that defense counsel's tactical judgment was manifestly unreasonable." *Commonwealth v. Finstein,* 426 Mass. 200, 203 (1997), citing *Commonwealth v. Roberts,* 423 Mass. 17, 20 (1996).

a. *The mother's psychiatric history.* The defendant claims that trial counsel failed to present evidence in the form of medical records and testimony that would have portrayed the victim's mother as having a mental illness. This, the defense claims, may have tended to show that she and not the defendant killed the victim. Contrary to the defendant's assertion, the available record portrays the victim's mother as suffering from intermittent bouts of depression, not schizophrenia. Nor did her history

of depression suggest that she was prone to torturing or beating her children. It was a reasonable tactical decision by trial counsel not to introduce her psychological history for fear of generating sympathy for her with the jury.

b. *Time of shaking.* The defendant argues that trial counsel was ineffective for not arguing that the violent shaking that caused the victim's death occurred closer to 7 A.M. than to 1:30 A.M. As the judge noted, one fundamental weakness with this argument is the absence of any expert opinion to the effect that an infant who suffered the same violent shaking at 1:30 A.M. would have had no heartbeat at 7 A.M.[8] The theory that the violent shaking occurred at or near 1:30 A.M. is supported by the evidence, and defense counsel was not ineffective.

c. *Consciousness of guilt.* The defendant claims that trial counsel should have requested a consciousness of guilt instruction for conflicting statements made by the victim's mother to police. A consciousness of guilt instruction may be appropriate when there is testimony that a defendant gave conflicting accounts of how a victim's injuries occurred. See *Cramer* v. *Commonwealth*, 419 Mass. 106, 111 (1994) (inconsistent statements may be interpreted as showing consciousness of guilt). The defendant cites to no authority supporting the proposition that consciousness of guilt instructions should be given regarding inconsistent statements of a third party (or codefendant). However, consciousness of guilt instructions were in fact given to the jury with regard to the defendant's statements. Failure of trial counsel to request that these instructions make specific reference to the victim's mother's statements does not come close to ineffective assistance of counsel.

d. *Commonwealth's closing argument.* The judge found that the Commonwealth's closing argument was fair in view of the evidence. A single statement made by the Commonwealth during closing argument was not supported by the evidence, namely

---

[8]In his reply brief, the defendant poses hypothetical questions trial counsel could have asked physician witnesses in order to demonstrate that the shaking occurred closer to 7 A.M. The problem is that the defendant offered no evidence in support of his motion for a new trial as to whether the answers to these questions would have even been beneficial. The medical evidence at trial supported the theory that the shaking occurred well before 7 A.M.

that the victim had been abused since she was fourteen days old. While this may be an inaccurate extrapolation of the testimony regarding the age of the rib fractures (which were dated as "at least" ten days prior to the death of the two month old victim), it was not ineffective assistance for trial counsel to have failed to object to this slight inaccuracy.

*Conclusion.* We affirm the defendant's convictions and the denial of his motion for a new trial.

*So ordered.*