## COMMONWEALTH *vs.* MELISSA HALSTROM
(and seven companion cases[1]).

No. 11-P-1276.

Essex. May 2, 2013. - October 11, 2013.

Present: MILKEY, CARHART, & SULLIVAN, JJ.

*Prostitution. Deriving Support From Child Prostitution. Intent. Practice, Criminal,* Argument by prosecutor, Instructions to jury, Opening statement, Severance. *Evidence,* Argument by prosecutor, Credibility of witness, Intent, Joint venturer, Statement of codefendant. *Words,* "Induce."

At the trial of indictments charging two defendants with inducing minors to become prostitutes in violation of G. L. c. 272, § 4A, the judge's instruction to the jury on the meaning of the word "induce" did not lower the Commonwealth's burden of proof by conflating inducement with influence or contribution [375-376]; further, an error in the judge's instruction concerning whether one minor had been engaged in prostitution before being induced to do so did not, given the circumstances of the case and the theory of defense, create a substantial risk of a miscarriage of justice [378-379].

At the trial of indictments charging two defendants with inducing minors to become prostitutes in violation of G. L. c. 272, § 4A, the evidence was more than sufficient to permit the jury to find that the minors' willingness and agreement to engage in prostitution was the product of one defendant's inducement, including her provision of drugs and alcohol to the minors to ensure their continued compliance and cooperation [376-378]; further, there was sufficient evidence that the second defendant, who had been indicted both as a principal and as an aider and abetter, was a knowing participant in the effort to introduce the minors to prostitution, and that he shared the first defendant's intent to induce them to engage in prostitution [379-381].

At the trial of indictments charging, inter alia, deriving support from minor prostitutes, in violation of G. L. c. 272, § 4B, the judge did not err in instructing the jury that the defendant could be convicted on a finding that she shared in the proceeds of prostitution, and there was, at any rate, overwhelming evidence that she actively recruited the minors, marketed them, placed their services in the stream of commerce, and thereafter shared in the proceeds of prostitution. [381-383]

In a criminal case, the judge did not abuse her discretion in denying one defendant's motion to sever his trial on indictments charging inducing two

---

[1]Five against Melissa Halstrom and two against Anthony Gorgoglione.

minors to become prostitutes, where inculpatory statements by his codefend-
ant did not implicate or inculpate him, where the judge had instructed the
jury that the statement could not be used against him, and where the
minors' testimony had implicated him directly. [383]
At a criminal trial, there was no error in the prosecutor's opening statement,
in which she referred to evidence that was later excluded because the
prosecutor was unable to authenticate it, where there was no indication that
the prosecutor's statement had been made other than in good faith. [383-384]
There was no merit to allegations of codefendants that the prosecutor, in clos-
ing argument at the trial of indictments charging, inter alia, inducing
minors to become prostitutes, either improperly inflamed the sympathies of
the jury or impermissibly vouched for the truthfulness of the minors in
question. [384-385]

INDICTMENTS found and returned in the Superior Court Depart-
ment on October 31 and December 5, 2007.

The cases were tried before *Kathe M. Tuttman,* J.

*Nicole M. Procida* for Melissa Halstrom.

*Jennifer Marie Petersen* for Anthony Gorgoglione.

*Marcia H. Slingerland,* Assistant District Attorney, for the
Commonwealth.

SULLIVAN, J. The defendants appeal from multiple convictions
of inducing a minor to become a prostitute, G. L. c. 272, § 4A,
and deriving support from a minor prostitute, G. L. c. 272,
§ 4B.[2] Both defendants argue that the jury instructions were
erroneous with regard to the definition of "inducement," that
there was insufficient evidence as to inducement, and that the
prosecutor's closing argument was improper. The defendant
Melissa Halstrom contends that the instruction regarding deriv-
ing support from prostitution was erroneous. The defendant
Anthony Gorgoglione argues that his motion to sever should
have been granted and that the prosecutor's opening statement
impermissibly referenced excluded evidence. We affirm.

*Background.* We summarize the facts of the case, leaving ad-
ditional facts for later discussion as needed. The case involved
three minors, Gail, Beth, and Maureen (collectively, girls), ages

[2]Halstrom appeals from three convictions of inducing three minors, whom
we shall call Gail, Beth, and Maureen, to become prostitutes and three convic-
tions of deriving support from or sharing in the proceeds of prostitution com-
mitted by a minor. Gorgoglione appeals from two convictions of inducing two
minors, Gail and Maureen, to become prostitutes.

374   84 Mass. App. Ct. 372 (2013)

Commonwealth *v.* Halstrom.

sixteen to seventeen, who the Commonwealth maintained were persuaded to participate in a prostitution business operated by Halstrom with the assistance of Gorgoglione. Gail had known Halstrom since 2005, when Halstrom dated her father. When Gail was "kicked out" of her house during her freshman year of high school in 2005, she stayed with Halstrom for about a month. She remained close to Halstrom and visited her frequently. In the summer of 2007, Gail again lived with her father. Gail also socialized with Halstrom. During this period, Gail lost her job at a coffee shop and was unable to find another position. After her father received an eviction notice, Gail told Halstrom that she was worried about her family's ability to pay the rent.

Upon learning of the eviction notice, Halstrom told Gail about her work as an escort, which she described as accompanying men to events. She said that the work was "fun" and "easy money." Halstrom said she was looking for girls, and "it didn't matter" if they were not eighteen. Halstrom said she would take pictures for a Web site and "go from there."

Gail, who, in her own words, was "17 and a little desperate," agreed to have the pictures taken. She also introduced her friends Beth (a runaway) and Maureen (who stayed with Gail several nights a week) to Halstrom. After meeting Halstrom, Beth and Maureen expressed an interest in the escort business. Gail and Beth participated in a photography session in which Gorgoglione posed the girls and took photographs of them in lingerie. Gail and Maureen later participated in a similar photography session. Both sets of photographs appeared on the Web site set up by the defendants.

Halstrom then organized "dates" for the girls during which they had sex with men. Gail and Maureen maintained that they were first told that they would have to have sex with the men in a hotel room shortly before the first date. It was undisputed that Beth understood this fact from the outset. The defense suggested that the proposition that the girls misunderstood their roles was disingenuous at best, particularly in light of the nature of the photographs taken and displayed on the Internet.

Halstrom provided the girls with hotel names and keys, gave them drugs, took them to the hotels, paid for the rooms, and took $100 of the $300 charged per hour by each girl. In addi-

tion to taking the photographs, Gorgoglione also transported the girls to the hotels, and discussed their dates with them.

After a period of time, Maureen stopped participating. Beth, who had run away from her home in another State, turned herself in to the police in the beginning of September, 2007, prompting the investigation that resulted in the indictment and trial of the defendants in 2009.

*Discussion.* 1. *Inducement.* Both defendants challenge the judge's instructions concerning inducement of a minor to become a prostitute. The defendants also challenge the sufficiency of the evidence as to inducement.

a. *Instruction — the meaning of "induce."* The judge instructed the jury that "[i]nduce means to lead or move another to do something by influence or persuasion." Halstrom argues that the judge's instruction was deficient because it lowered the Commonwealth's burden of proof by conflating inducement with mere influence or contribution. Halstrom did not object or request other instructions. Our review is therefore for error creating a substantial risk of a miscarriage of justice. *Commonwealth* v. *Marinho*, 464 Mass. 115, 122 (2013).

In the absence of a statutory definition, "we give [the words] their usual and accepted meanings, as long as these meanings are consistent with the statutory purpose. . . . We derive the words' usual and accepted meanings from sources presumably known to the statute's enactors, such as their use in other legal contexts and dictionary definitions." *Commonwealth* v. *Zubiel*, 456 Mass. 27, 32 (2010), quoting from *Commonwealth* v. *Zone Book, Inc.*, 372 Mass. 366, 369 (1977). See Singer & Singer, Statutes and Statutory Construction § 46.4 (7th ed. 2007); *Commonwealth* v. *O'Keefe*, 48 Mass. App. Ct. 566, 567 (2000).

Webster's Third New International Dictionary 1154 (2002) defines the word "induce" to mean, in pertinent part, "to move and lead (as by persuasion or influence) . . . to inspire, call forth, or bring about by influence or stimulation." This construction, which the judge adopted in the jury instruction, also "gains support from the language and construction of related statutes." *Commonwealth* v. *Welch*, 444 Mass. 80, 87 (2005). In G. L. c. 272, § 4, as amended by St. 1998, c. 232, § 3, which punishes "[w]hoever induces any person under 18 years of age

of chaste life to have unlawful sexual intercourse," the word "induce" has been construed to mean "to move and lead (as by persuasion or influence); prevail upon; influence, persuade." *Commonwealth* v. *Foley,* 24 Mass. App. Ct. 114, 115 n.1 (1987) (quotation omitted). More recently, in *Commonwealth* v. *Matos,* 78 Mass. App. Ct. 578, 588 n.14 (2011), we noted with respect to the child enticement statute, G. L. c. 265, § 26C, that the word "induce" "appears to be used interchangeably with 'entice,' 'lure,' 'persuade,' 'tempt,' 'incite,' 'solicit,' 'coax,' or 'invite.' " The word "induce" also forms one of the statutory bases for a conviction of contributing to the delinquency of a minor under G. L. c. 119, § 63, as amended by St. 1996, c. 450, § 162, by "tending to cause or induce such delinquency" of a child. See *Matos, supra.* The usual and accepted meaning of the word "induce," as judged by common parlance and legislative usage, thus encompasses either influence or persuasion. With respect to G. L. c. 272, § 4A, the salient inquiry is whether by word or deed the defendant has influenced or persuaded "a minor to become a prostitute."[3] There was no error in the instruction on this ground.[4]

b. *Sufficiency — Halstrom.* Halstrom contends that there was

[3]General Laws c. 272, § 4A, inserted by St. 1979, c. 676, provides, in pertinent part, "Whoever induces a minor to become a prostitute, or who knowingly aids and assists in such inducement, shall be punished."

[4]We reject Halstrom's suggestion that we should adopt the more stringent definition of "induce" found in cases involving the law of entrapment, a question we reserved in *Commonwealth* v. *Matos,* 78 Mass. App. Ct. at 588 n.14. See, e.g., *Commonwealth* v. *Shuman,* 391 Mass. 345, 351-352 (1984) (requiring pleading, arguing, or something more than mere solicitation). In the entrapment context, " 'the state cannot tolerate . . . having its officers, who are charged with the duty of enforcing the law, instigate crime by implanting criminal ideas in innocent minds and thereby bringing about offenses that otherwise would never have been perpetrated.' R. Perkins, Criminal Law 1031 (2d ed. 1969)." *Id.* at 350-351. A stricter definition of inducement is therefore employed in cases involving entrapment to ensure that constitutional guarantees are not eroded by governmental misconduct. Here, quite different concerns are at play. The very purpose of the related statutes protecting minors from sexual exploitation is to punish those who would "implant ideas" and to deter those who would solicit, suggest, or offer opportunities for sexual exploitation to vulnerable minors. In this context, where "the Legislature has expressed a clear intent to protect children from sexual exploitation by adults," we construe the statute in a manner consistent with the plain meaning of its language and that purpose. *Commonwealth* v. *Matos, supra* at 584.

insufficient evidence of inducement because the girls chose to be prostitutes, saw her lifestyle as desirable, and thus willingly and voluntarily engaged in prostitution for this reason. Viewing the evidence in the light most favorable to the Commonwealth, see *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979), the evidence presented was more than sufficient to permit the jury to find beyond a reasonable doubt that Halstrom intentionally cultivated an image intended to persuade the girls that being an escort was desirable, and that she facilitated their entry into the trade in myriad ways.

Halstrom befriended the girls at a particularly vulnerable time in each of their lives. She socialized with the girls at her apartment, served them champagne, and gave them drugs. She told the girls the work was "fun" and "easy money." Gail and Beth saw that Halstrom had a nice car, nice furniture, and a well-kept apartment, which Halstrom said was paid for by her clients. Halstrom told Gail that she was "looking for girls" to join the escort service and that it "didn't matter" if they were not eighteen.

Moreover, there was evidence that Halstrom did much more than passively market her lifestyle. Viewed in the light most favorable to the Commonwealth, the jury could have found beyond a reasonable doubt that she methodically led the girls into prostitution. At the outset, she gave a partial description of the services provided to two of the girls, withholding information as to the actual nature of the escort service. She then arranged for highly suggestive photographs to be taken of the girls, bought lingerie for them for two photography sessions, assisted in the girls' poses,[5] and said that she would be using the photographs "for her business." Whether the girls were misled by Halstrom's characterization of her business, or remained uninformed even after the photographs were taken, was for the jury. Even if the jury found, as Halstrom urged, that the girls were not misled, the jury were also permitted to find that the incremental exposure to all of the particulars of the business was part of a successful plan of gradual acclimatization.

Once the girls cooperated in the initial photography sessions,

---

[5]The photographs showed the girls dressed in lingerie in sexually suggestive poses. Some photographs showed one or more girls partially nude. One set of photographs depicted two of the girls embracing and fondling each another.

Halstrom then moved forward to set them up with dates. She gave the girls pseudonyms for the Web site, told the girls when their dates would be, recruited the dates, gave the girls the hotel number and room key, drove the girls to the hotel, provided condoms, and paid for the hotel room. She gave one or more of the girls Klonopin in advance of the first date and supplied them with the drug thereafter. She also gave them alcohol. When Beth became nervous about the dates, Halstrom gave Maureen the drug Klonopin and told her to "make [Beth] take her Klonopin." This evidence was sufficient to permit a rational jury to find that the girls' willingness and agreement to engage in prostitution was the product of Halstrom's inducement — that is, a carefully planned introduction to the trade, including the persuasive and enticing image that Halstrom created, her affirmative acts in setting up and preparing the girls for the dates, marketing them as part of her business, and providing them with drugs and alcohol to ensure their continued compliance and cooperation.

c. *Instruction — the timing of inducement.* Gorgoglione contends that the inducement instruction was erroneous because the instruction relieved the Commonwealth of its burden of proving that the two girls he was charged with inducing, Gail and Maureen, see note 2, *supra*, were not already engaging in prostitution. As to Maureen, there is no evidence that she was engaged in prostitution at any time prior to meeting Halstrom or Gorgoglione. Gail, however, equivocated on cross-examination as to whether her first act of prostitution occurred before or after meeting Gorgoglione. Gorgoglione did not object to the instruction. We therefore review for error creating a substantial risk of a miscarriage of justice. *Commonwealth* v. *Marinho*, 464 Mass. at 122.

In *Commonwealth* v. *Matos*, 78 Mass. App. Ct. at 586, we held that "the language of the statute [G. L. c. 272, § 4A,] is plain and unambiguous and that it clearly expresses the Legislature's intent to penalize a person for inducing a minor, *who is not then so engaged*, to engage in the commercial enterprise of prostitution by offering for hire his or her body for indiscriminate sexual activity" (emphasis added).[6] In *Matos*, the instruction

---

[6]The trial judge did not have the benefit of *Matos*, which was decided almost two years after the trial in this case.

affirmatively precluded the jury from considering whether the minor was already engaged in prostitution at the time she was allegedly induced. *Id.* at 587-588. The present case is distinguishable in the sense that the instruction did not remove the question from the jury. However, the instruction stated only that the Commonwealth must prove "that the defendant induced or knowingly aided and assisted in inducing a minor to engage in prostitution." The omission of the phrase "who is not then so engaged" would permit a rational juror to conclude that any act of prostitution, regardless of when it took place, was punishable. The instruction was erroneous because it omitted an element of the offense. *Ibid.*

We do not think, however, that "the error materially influenced the verdict in the light of the evidence and law of the entire trial." *Commonwealth* v. *Velez*, 82 Mass. App. Ct. 12, 19 (2012). The defense at trial was that the girls willingly chose to engage in prostitution and came to Halstrom ready to participate, and that neither defendant influenced, persuaded, or led them in any way. In the context of this defense, the timing of Gail's first date was largely immaterial, and Gorgoglione made no argument to the jury on this basis. More importantly, Gorgoglione was indicted as a coventurer. As a result, Halstrom's conduct in furtherance of the venture was attributable to him. See *Commonwealth* v. *Zanetti*, 454 Mass. 449, 455 (2009), abrogated in part on other grounds by *Commonwealth* v. *Britt*, 465 Mass. 87, 97-101 (2013). Under both the statute and the common law, one who gives aid or assistance to the venture "is equally guilty with the perpetrator of the crime." *Commonwealth* v. *Dahlstrom*, 345 Mass. 130, 132 (1962). It was undisputed that Gail engaged in prostitution for the first time after meeting Halstrom. The record therefore contains no "evidence that could rationally lead to a contrary finding with respect to the omitted element." *Matos, supra* at 588, quoting from *Neder* v. *United States*, 527 U.S. 1, 19 (1999).

d. *Sufficiency — Gorgoglione.* Gorgoglione posits that there was insufficient evidence that he knew that the girls were being recruited for purposes of prostitution (rather than simply as escorts), and that he therefore lacked the requisite intent to commit the crime charged. He further contends that the evidence

was insufficient to show that he induced either Gail or Maureen to engage in prostitution because they both made the decision to become prostitutes of their own accord without any influence by him. Because Gorgoglione was indicted both as a principal and as an aider and abettor, see G. L. c. 272, § 4A, we analyze both prongs of the indictment under a single standard, that is, "whether the evidence is sufficient to permit a rational juror to conclude beyond a reasonable doubt that the defendant knowingly participated in the commission of the crime charged, with the intent required to commit the crime." *Commonwealth* v. *Zanetti*, 454 Mass. at 468.[7]

Here, the evidence viewed in the light most favorable to the Commonwealth was sufficient to permit a jury to infer Gorgoglione's knowledge, intent, and influence "from his knowledge of the circumstances and participation in the crime." *Commonwealth* v. *Norris*, 462 Mass. 131, 139 (2012), quoting from *Commonwealth* v. *Carnes*, 457 Mass. 812, 823 (2010). Gorgoglione took photographs of the girls in lingerie, posed them alone and in pairs in a highly suggestive manner, and reviewed the photographs with the girls to determine which ones they liked. During the second photography session, there was conversation in the presence of both Halstrom and Gorgoglione about the rates charged, Halstrom's cut, and the clients that Gail and Beth had seen. Gorgoglione said that he would put the photographs on the Web site and that he "ran" the Web site. The photographs later appeared on the Web site. Gorgoglione also picked up Gail and Beth from Halstrom's home and took them to a hotel. He discussed the escort business with Gail on the way home. Gorgoglione offered incentives to recruit other girls to the business, telling Gail that "[i]f [the girls] got five girls to sign up, they would send [the girls] . . . on vacation basically." The evidence, taken in the light most favorable to the Commonwealth, was sufficient to permit a jury to infer, based on Gorgoglione's actions, that he was a knowing participant in the effort to introduce the girls to prostitution, and that he shared Halstrom's intent to induce them to engage in prostitution.

---

[7]Although the present case was tried in April and May of 2009, *Zanetti*, decided in August of 2009, applies with respect to sufficiency of the evidence. See *Commonwealth* v. *Zanetti, supra* at 468; *Commonwealth* v. *Jansen*, 459 Mass. 21, 28 n.20 (2011).

Relying on *Commonwealth* v. *Matos*, 78 Mass. App. Ct. at 589, Gorgoglione further contends that he is entitled to a required finding of not guilty because Gail's inconsistent testimony suggested that she had already been engaged in prostitution before she met him at the photography session.[8] "[I]t does not matter that some of the evidence could be characterized as equivocal or contradictory." *Commonwealth* v. *James*, 424 Mass. 770, 785 (1997), quoting from *Commonwealth* v. *Ruci*, 409 Mass. 94, 97 (1991). Her testimony presented "an issue of credibility, an issue that is solely within the province of the jury," and which we resolve in favor of the Commonwealth when a question of sufficiency is presented on appeal. *Commonwealth* v. *James, supra.* Moreover, on the evidence, the jury could have found beyond a reasonable doubt that Gorgoglione, as an aider and abettor, shared the intent with Halstrom to persuade Gail to engage in the first act of prostitution, and was thus guilty of the crime charged regardless of whether the first instance of prostitution took place before or after he took the photographs. "The acts and declarations of one person engaged in a common undertaking are admissible against [and imputable to] the others so engaged on the premise that each person is the agent of the other." Nolan & Sartorio, Criminal Law § 635, at 645 (3d ed. 2001).

2. *Deriving support from prostitution.* Halstrom contends that her due process rights were violated because the judge's instruction requiring "that the defendant shared in some way in what she knew were the earnings or proceeds from that person's prostitution" lowered the Commonwealth's burden of proof under G. L. c. 272, § 4B.[9] She contends that the judge's instruction erroneously omitted the element of deriving support or maintenance, in whole or in part, from the proceeds of prostitution and that this portion of the instruction is necessary in order

---

[8]Gail gave conflicting accounts of when she engaged in her first act of prostitution, initially stating that it was before the first photography session but later (on cross-examination) stating that she could not remember exactly when it was.

[9]General Laws c. 272, § 4B, inserted by St. 1979, c. 676, provides, in pertinent part, "Whoever lives or derives support or maintenance, in whole or in part, from the earnings or proceeds of prostitution committed by a minor, knowing the same to be earnings or proceeds of prostitution, or shares in such earnings, proceeds or monies, shall be punished."

to avoid conviction of persons for conduct unrelated to pimping activity, as opposed to punishing "pimps and purveyors." See *Commonwealth* v. *Thetonia,* 27 Mass. App. Ct. 783, 786 (1989).

The statute permits conviction either for deriving support or maintenance from, or for sharing in, the proceeds of prostitution. "The word 'or' is given a disjunctive meaning unless the context and the main purpose of all the words demand otherwise." *Commonwealth* v. *Davie,* 46 Mass. App. Ct. 25, 27 (1998), quoting from *Nuclear Metals, Inc.* v. *Low-Level Radioactive Waste Mgmt. Bd.,* 421 Mass. 196, 212 (1995), and *Eastern Mass. St. Ry.* v. *Massachusetts Bay Transp. Authy.,* 350 Mass. 340, 343 (1966). See Singer & Singer, Statutes and Statutory Construction, *supra* at § 21.14. The instruction given confined the Commonwealth to the single theory of sharing proceeds, and to that extent favored Halstrom. Halstrom maintains, however, that this limited instruction heightened the risk that she was convicted of simply taking a gift or thing of value from a prostitute, contrary to the holding in *Thetonia.* Because there was no objection to the instruction on this basis, we review for error that creates a substantial risk of a miscarriage of justice. *Commonwealth* v. *Marinho,* 464 Mass. at 122.

In *Thetonia,*[10] the evidence was that the defendant drove an acquaintance to and from work and waited for her "while she plied her trade." *Commonwealth* v. *Thetonia, supra* at 786. The acquaintance supplied the defendant with gasoline money, and occasionally with drugs. *Id.* at 785-786. We held that these "activities are not what is commonly viewed as pimping." *Id.* at 786. Halstrom, however, did not merely share proceeds based on conduct disassociated from pimping activities. The evidence was overwhelming that Halstrom actively recruited the girls, marketed them, placed their sexual services in the stream of commerce, and thereafter shared in the proceeds of prostitution. She did not deny this conduct. Her defense at trial was that the

---

[10]*Commonwealth* v. *Thetonia, supra,* interpreted G. L. c. 272, § 7, as appearing in St. 1980, c. 409, which criminalizes deriving support from an adult prostitute: "Whoever, knowing a person to be a prostitute, shall live or derive support or maintenance, in whole or in part, from the earnings or proceeds of his prostitution, from moneys loaned, advanced to or charged against him by any keeper or manager or inmate of a house or other place where prostitution is practiced or allowed, or shall share in such earnings, proceeds or moneys, shall be punished."

girls initiated their participation, and that she did not induce them, a factual question which the jury decided. Halstrom's pimping activity was explicit, and in that context the instruction was more than adequate.

3. *Motion to sever.* Gorgoglione argues that his due process rights were violated when a redacted statement made by Halstrom was admitted at the joint trial because the jury were permitted to consider Halstrom's inculpatory statement when considering Gorgoglione's guilt as an aider and abettor.

Absent a constitutional requirement, the decision whether to sever is lodged in the sound discretion of the trial judge. *Commonwealth* v. *Siny Van Tran*, 460 Mass. 535, 543 (2011).

Halstrom's redacted interview did not implicate or inculpate Gorgoglione in any way. *Bruton* v. *United States*, 391 U.S. 123 (1968), is therefore inapplicable. Further, no prejudice accrued to Gorgoglione because the judge instructed both contemporaneously and in the final charge that the statement could not be used as evidence against him. All three girls testified and directly implicated Gorgoglione. The judge did not abuse her discretion.

4. *Opening statement.* Gorgoglione contends, for the first time on appeal, that the prosecutor's opening statement improperly linked Gorgoglione to "GoDaddy.com," a Web site registration service. Before trial, the Commonwealth moved to introduce billing and subscriber records produced by "GoDaddy.com" purporting to show that Gorgoglione paid for and registered the domain name of the Web site set up by the defendants. The judge excluded the records because the business records affidavit failed to authenticate them properly, but stated that she could see no reason to exclude the evidence if the prosecutor could later produce a proper affidavit and certificate. During her opening statement, the prosecutor stated that jurors would hear about "the records from GoDaddy.com that the [defendants'] website was set up and paid for by an individual named Anthony Gorgoglione." At trial, the Commonwealth attempted to get, but was unsuccessful in obtaining, a proper affidavit, and the judge excluded the evidence. The judge instructed the jury that opening statements were not evidence and that the defendants were to be convicted only on admitted evidence.

"A prosecutor in his opening may explain the facts that he

expects to prove during the trial, so long as he has a good faith expectation that he will be able to do so with relevant and admissible evidence." *Commonwealth* v. *Jones,* 439 Mass. 249, 260 (2003), quoting from *Commonwealth* v. *Thomas,* 429 Mass. 146, 157 (1999). Here, there is no indication that the prosecutor's opening statement was made "other than in good faith." *Commonwealth* v. *O'Connell,* 438 Mass. 658, 668 (2003). Accord *Commonwealth* v. *Rosa,* 73 Mass. App. Ct. 540, 544 (2009), quoting from *Commonwealth* v. *Qualls,* 440 Mass. 576, 586 (2003) ("Absent a showing of bad faith or prejudice . . . the fact that certain evidence fails to materialize is not a ground for reversal"). Accordingly there was no error.[11]

5. *Closing argument.* Both defendants contend that the prosecutor's closing argument inflamed the passions and sympathies of the jury. Gorgoglione also argues that the prosecutor improperly used rhetorical questions and vouched for a witness's credibility. We review first for error, and reach the question of impact on the jury only if error is shown. See *Commonwealth* v. *Smith,* 460 Mass. 385, 398 (2011); *Commonwealth* v. *Mejia,* 463 Mass. 243, 250 (2012).

a. *Sympathy.* In their closings, both defendants argued that the girls chose to engage in prostitution at Gail's urging, not Halstrom's, and relied on the girls' family history, background, and lifestyle, including previous drug use, as further basis for their decision. In response, the prosecutor stated, "Ladies and gentlemen, every single thing that the defendants would have you hold against these girls, it's not about sympathy." The prosecutor, without objection, further stated that the fact that the girls were minors, did not come from nuclear families, and were using alcohol and drugs made them particularly "susceptible to these crimes." The prosecutor also stated, "[Maureen] wanted to feel beautiful and ended up feeling dirty and ashamed of herself. [Gail] wanted money, and ended up eating Klonopin.

---

[11]Nor, alternatively, do we discern prejudice creating a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Alammani,* 439 Mass. 605, 613 (2003). The judge's final charge prohibited the jury from using as evidence the prosecutor's opening statement that Gorgoglione had set up and paid for the defendants' Web site through "GoDaddy.com." The jury are presumed to follow the judge's instructions. *Commonwealth* v. *Isabelle,* 444 Mass. 416, 420 (2005).

And [Beth] didn't want to go home until life here made home look pretty good."

The prosecutor's arguments regarding the girls' home lives and their motivations were relevant to the Commonwealth's theory that they were "susceptible" to inducements to engage in prostitution. See *Commonwealth* v. *Paradise*, 405 Mass. 141, 152-154 (1989). The prosecutor's description of the impact of prostitution on the girls was taken nearly verbatim from their testimony, and was "a reasonable and proper attempt to counter the suggestion in defense counsel['s] summation" that the girls' conduct was voluntary, rather than the product of influence or persuasion by the defendants. *Commonwealth* v. *Parenti*, 14 Mass. App. Ct. 696, 705 (1982).

b. *Vouching.* Gorgoglione argues that the prosecutor impermissibly vouched for the truthfulness of the girls, in part by using rhetorical questions which shifted the burden of proof to Gorgoglione. The prosecutor argued in closing that the girls had nothing to lie about because they had immunity, and explained inconsistencies in their prior statements on the basis that teenagers tend to lie about drinking and drug use, and that teenagers often lie to the police. Gorgoglione objected; thus, our review is for prejudicial error. See *Commonwealth* v. *Francis*, 450 Mass. 132, 141 (2007).

"Where credibility is at issue, it is certainly proper for counsel to argue from the evidence why a witness should be believed." *Commonwealth* v. *Siny Van Tran*, 460 Mass. at 555, quoting from *Commonwealth* v. *Thomas*, 401 Mass. 109, 116 (1987). The use of rhetorical questions was a device used to refute the defendants' assertions that the girls were lying about why they engaged in prostitution, and did not constitute vouching. Nor was there any suggestion that Gorgoglione had any duty to present evidence on the issue of inducement. See *Commonwealth* v. *Tu Trinh*, 458 Mass. 776, 786-788 (2011) (prosecutor's rhetorical questions did not shift burden of proof but explained why Commonwealth's witnesses' testimony was credible); *Commonwealth* v. *Rogers*, 43 Mass. App. Ct. 782, 786 (1997) (same). The prosecutor did not act improperly in responding to the defendants' challenge to witness credibility.

*Conclusion.* For these reasons, we affirm the convictions in all respects.

*Judgments affirmed.*