**UNITED STATES of America, Appellee,**

v.

**Mohammed ODUFOWORA, Defendant-Appellant.**

No. 86–1617.

United States Court of Appeals, First Circuit.

Argued Feb. 2, 1987.

Decided March 26, 1987.

William C. Newman with whom Lesser, Newman, Souweine & Nasser, Northampton, Mass., was on brief, for appellant.

Mary Elizabeth Carmody, Asst. U.S. Atty., with whom Robert S. Mueller, III, U.S. Atty., Boston, Mass., was on brief, for appellee.

Before CAMPBELL, Chief Judge, ALDRICH and BREYER, Circuit Judges.

BAILEY ALDRICH, Senior Circuit Judge.

This appeal of defendant Mohammed Odufowora, a Nigerian national, from a conviction for a knowing failure to appear, after release on bail, in violation of 18 U.S.C. § 3146(a), reaches us after he has served his sentence and been deported. He faces, at the outset, a government motion to dismiss for mootness. Defendant resists on the ground that his conviction sullies his record, particularly if he should want to reapply for admission to the United States. The force of this argument would seem questionable in view of the fact that his record additionally includes convictions—on pleas of guilty—for fraudulent statements to the Immigration & Naturalization Service; obtaining a student loan by fraud and false statements, and suborning perjury, which we would think in themselves sufficient to place him on the INS unwelcome list. However, the government bears a heavy burden, and we will deny the motion.

On the merits, we start by agreeing with defendant that both the government and the court appear to have thought that the exceptions and exclusions in the Federal Rules of Evidence swallow the hearsay rule whole. When met with unanswerable objections here to the rankest hearsay, the government would say that the evidence was part of the "background," or "explain[ed] why the marshal took the actions he did," as if that sterilized all imperfections. It also contends that much of this evidence was not admitted for its truth. *Cf. United States v. Mazza*, 792 F.2d 1210, 1215 (1st Cir.1986), *cert. denied*, — U.S. ——, 107 S.Ct. 1290, 94 L.Ed.2d 147 (1987). This limitation, however, is a recent discovery, unsupported by any rulings, and quite contrary to the use the government made of this evidence. On the other hand, against this the court admitted, as bearing on defendant's "state of mind," evidence that might well have attracted the jury's sympathy, but that was of no relevance to a state of mind that would be a defense to the charge.

In this Mexican standoff there is one guiding fact. Defendant took the stand and admitted that he knew that he was supposed to appear in court for sentencing on January 7, 1986, and that he failed to do so. He further admitted going to New York and Detroit following his entry of plea in December 1985, and being arrested in Detroit in March while using an assumed name. By way of explanation, he testified that he feared that if he did return to court he would be deported. This explanation was emphasized in defense counsel's opening and closing arguments.

Fear of deportation is not a justification for breach of bail conditions. 18 U.S.C. § 3146(a) reads in part,

A person commits an offense if, after having been released pursuant to this chapter—(1) he knowingly fails to appear before a court as required by the conditions of his release....

Subsection (c) reads,

(c) *Affirmative defense.* It is an affirmative defense to a prosecution under this section that uncontrollable circumstances prevented the person from appearing or surrendering, and that the person did not contribute to the creation of such circumstances in reckless disregard of the requirement that he appear or surrender, and that he appeared or surrendered as soon as such circumstances ceased to exist.

As to subsection (a), there is no question that defendant acknowledged through his own testimony that he "knowingly" failed to appear in court on January 7. *Cf. United States v. Wells*, 766 F.2d 12 (1st Cir. 1985); *see also* S.Rep. No. 98–225, 98th Cong., 2d Sess., *reprinted in* 1984 U.S. Code Cong. & Admin.News 3182, 3214–15.

As to subsection (c), the district court properly declined to charge the jury that

the possibility of subsequent deportation might constitute an "uncontrollable circumstance" within the meaning of the statute. *See id.* at 3215 ("It is intended that the defense should apply where, for example, a person is recuperating from a heart attack and to leave his bed would imperil his life, or, after he had made careful plans for transportation to the court house, his vehicle breaks down or unexpected weather conditions bring traffic to a halt.") We also agree with the court's decision to deny an instruction on a "duress" or "competing harms" defense. Defendant's single unexplained assertion that he was "planning" to return to the court "at some point" but was "stranded somewhere" apparently refers to a time after January 7. In any event, such a vague pronouncement, by way of affirmative defense, in no way undermines the conclusiveness of the case against him.

Even limited to properly admissible evidence the government made out a case. *United States v. Wells,* ante. It doubled it with inadmissible evidence. We need not decide whether, if defendant had rested at this point, we would have invoked *United States v. Mazza,* ante, to say that the admission of the additional evidence was harmless error. But defendant having taken the stand and conclusively convicted himself, we must regard as harmless surplusage the government's improper evidence directed at exactly the same issue— whether he had "knowingly" failed to appear. And, if it might otherwise have merit, we cannot take seriously defendant's assertion that, but for the improperly admitted evidence, he would not have taken the stand. *Cf. Fahy v. Connecticut,* 375 U.S. 85, 91, 84 S.Ct. 229, 232, 11 L.Ed.2d 171 (1963). His taking the stand to explain his fear of deportation was presaged in counsel's opening, and there was ample properly admitted evidence to have required the opening to be followed up.

For its success on appeal the government may thank its good fortune. At the same time, we waste no sympathy over defendant.

*Affirmed.*