## COMMONWEALTH vs. ALVIN LOVE.

Nos. 87-896 & 88-P-389.

Middlesex.  September 20, 1988. — November 15, 1988.

Present: PERRETTA, KAPLAN, & WARNER, JJ.

*"Bail Jumping." Constitutional Law*, Assistance of counsel. *Due Process of Law*, Vagueness of statute. *Practice, Criminal*, Required finding. *Necessity. Duress.*

In a proceeding for postconviction relief, the judge correctly ruled there was no merit to the defendant's claim that the words "without sufficient excuse" appearing in the "bail-jumping" statute, G. L. c. 276, § 82A, rendered that statute unconstitutionally vague. [544-547]

In a prosecution under G. L. c. 276, § 82A, the Commonwealth is not required to establish in its case-in-chief that the defendant acted without sufficient excuse in his failure to appear in court as required. [547-549]

On appeal from a conviction under the "bail-jumping" statute, G. L. c. 276, § 82A, there was no merit to the defendant's contention that the prosecution had not proved beyond a reasonable doubt that the defendant had acted "without sufficient excuse" when he failed to appear on the second day of his trial. [549]

INDICTMENT found and returned in the Superior Court Department on February 5, 1986.

The case was tried before *Robert W. Banks*, J., and a motion for postconviction relief was heard by him.

*Steven J. Rappaport* (*Rosanne L. Ciardiello* with him) for the defendant.

*Judith C. Knight* of Colorado (*Catherine E. Sullivan*, Assistant District Attorney, with her) for the Commonwealth.

KAPLAN, J.  An indictment charged the defendant, Alvin Love, with a violation of the "bail-jumping" statute, G. L. c. 276, § 82A. The statute, inserted by St. 1965, c. 396, provides: "A person who is released by court order or other lawful authority on bail or recognizance on condition that he

will appear personally at a specified time and place and who fails without sufficient excuse to so appear shall be punished . . . ."[1]

At trial to a Middlesex jury, the Commonwealth established the following through Robert McDade, an assistant clerk at the Superior Court in Cambridge. The defendant on June 10, 1985, was awaiting trial on an indictment charging him with breaking and entering. That day he was released from detention upon depositing $500 as surety and entering into a "recognizance" in the usual form to appear at places and times that might be specified. The recognizance stated: "A defendant who fails without sufficient excuse to appear in court after release on bail or recognizance may be punished [stating the penalty]." The breaking-and-entering case came to trial on December 2, 1985, with the defendant in attendance. Trial was continued to the next day at 10:00 A.M. The defendant was on notice that he was required to appear at that time. He failed to appear. The judge consulted with the prosecutor and defendant's counsel. They had no information about the defendant's whereabouts. An officer in open court called the defendant to the bar. There was no response. A default issued, a default capias went to the district attorney's office, and bail was revoked and ordered forfeited. Trial resumed on December 4 with the defendant still absent, and a conviction followed.

When McDade completed his foregoing testimony, the Commonwealth called Lieutenant Donald Whalen of the Wellesley police. Whalen testified that on January 30, 1986, he had an interview with the defendant at the Wellesley police station where he was being detained after an arrest. Miranda warnings had been given. When the Commonwealth inquired whether Whalen had asked the defendant where he was on January 6, 1986,[2] defense counsel interposed, raising the question whether

---

[1] The penalty prescribed is a fine of not more than $1,000 or imprisonment for not more than a year in a house of correction, or both, but the fine or imprisonment may not exceed the maximum sentence prescribed for any crime in connection with which the defendant's appearance was required.

[2] It appears that the defendant had on his person a document showing his presence in Florida under an assumed name on January 6.

the defendant had given his response voluntarily. Upon voir dire, Whalen testified at some length. The judge ruled that the defendant's statement should be excluded.[3] Thereupon, without offering further evidence, the Commonwealth rested.

No motion for a required finding of not guilty was offered by the defense. The defendant took the stand. He said, in effect, that he believed the breaking-and-entering trial was unfair to him because his lawyer had declined to urge a defense of "diminished capacity" and also because there were witnesses whom the defense had not reached in time for the trial. Under pressure of this feeling, he had decided to quit the trial (not knowing how the trial might proceed) and to try to raise money to get better legal representation. He went to Florida, then returned and lived at various addresses until apprehended on January 30, 1986.[4] On cross-examination the defendant was impeached by the record of his several criminal convictions. The defense rested, again without moving for a required finding.

After closing speeches, the judge instructed that the Commonwealth had the burden to prove, beyond a reasonable doubt, that the defendant was released by court order on bail, that it was a condition of his release that he appear at places and times as specified, that he failed to appear at a place and time specified, and that his failure to appear was without sufficient excuse. With respect to the last element, the judge said in substance: he could not supply a pat definition, but he could give illustrative examples on either side of the line of "sufficient excuse," and he did so;[5] he left it to the jury, applying their judgment, to decide whether the defendant's explanation (if

---

[3] The judge evidently thought the defendant's "voluntariness" had been compromised through conversation with Whalen about the defendant's getting a favorable recommendation from the police in exchange for furnishing information concerning crimes by others. The defendant interspersed the conversation with an account of where he had been after jumping bail.

[4] The arrest was for a fresh breaking and entering committed that day.

[5] Examples of sufficient excuse: serious illness, accident, confinement as by kidnapping.

Contrary: simple refusal to face responsibility, simple intent to escape punishment for wrongdoing or to frustrate justice.

believed), which suggested a kind of duress;[6] would be regarded by a reasonably prudent person as a sufficient excuse for failing to appear in court or would rather be thought an arbitrary act. There was no objection to the charge. The jury brought in a verdict of guilty on September 9, 1986, and judgment of conviction followed.[7]

On November 13, 1987, represented by new counsel, the defendant moved for postconviction relief, claiming that trial counsel had provided him with "ineffective assistance" under the rule of *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974), on the following grounds: first, counsel failed to move to dismiss the bail-jumping indictment as being based on a statute void for "vagueness" through its use of the words "without sufficient excuse"; second, passing the question of vagueness, counsel failed to move at the close of the Commonwealth's case (or at the close of all the evidence) for a required finding of not guilty on the ground that the Commonwealth had not proved beyond a reasonable doubt that the defendant acted without sufficient excuse. The judge (who had also presided at the trial) denied the postconviction motion with a memorandum dated March 16, 1988, and the present appeal is from the denial.[8]

We agree with the judge that there was no merit in the constitutional claim and that a motion for a required finding would have been futile. Accordingly any question of the effectiveness of counsel becomes inconsequential.

1. Moving under Mass.R.Crim.P. 30(a) and (b), 378 Mass. 900 (1979), the defendant claimed that his counsel erred in failing to apply before trial (see Mass.R.Crim.P. 13[a], 378 Mass. 871 [1979]) for dismissal of the indictment on the "vagueness" ground. This, presumably, would have been an attack on the statute "on its face," and such, indeed, is the line of argument pursued in the defendant's brief. By a settled rule

---

[6] The judge read a standard definition of duress.

[7] The defendant was sentenced to a year's imprisonment in a house of correction, to take effect from and after sentence being served.

[8] An appeal was also filed from the judgment of conviction.

in the Commonwealth, however, so broad a contention, which asks the court to consider all situations to which the statute might be applied, and to void it if any of the applications would be unconstitutional, is reserved for cases where the statute appears to trench on First Amendment (or similar) rights. See *United States* v. *National Dairy Prod. Corp.*, 372 U.S. 29, 36 (1963); *Kolender* v. *Lawson*, 461 U.S. 352, 359 n.8 (1983); *Commonwealth* v. *Bohmer*, 374 Mass. 368, 371 n.6 (1978).[9] The present statute is not of that type, so the question whether it could withstand "facial" scrutiny is irrelevant. Rather the question is whether the statute, or, more closely, the particular words objected to, identify for citizens and law enforcement authorities a core of condemned conduct, and whether this case, as it shaped up, appears to be within the core: the inquiry is contextual. See *United States* v. *National Dairy Prod. Corp.*, 372 U.S. at 32-33; *Commonwealth* v. *Adams*, 389 Mass. 265, 270-271 (1983); *Commonwealth* v. *Williams*, 395 Mass. 302, 304 (1985); *Commonwealth* v. *Jasmin*, 396 Mass. 653, 655 (1986).

As the judge instructed, the expression "without sufficient excuse" conveys the meaning of deliberate conduct contrary to that which was required — this in distinction from conduct which the actor did not will, or was unable to control. Thus the statute resembles, if, indeed, it is not equivalent to, a common kind of bail-jumping statute that speaks. of "willful" failure to appear as required.[10] There is, no doubt, an ineradicable element of imprecision in either statutory formulation. But the vagueness doctrine "is not a principle designed to convert into a constitutional dilemma the practical difficulties

---

[9] In an extreme case, lack of standard in a criminal statute might be treated like that in a statute affecting First Amendment rights. See *Kolender* v. *Lawson*, 461 U.S. at 359 n.8, citing *Lanzetta* v. *New Jersey*, 306 U.S. 451 (1939).

[10] The Federal statute on bail-jumping in effect until 1984, 18 U.S.C. § 3150 (1982), used the expression "willfully fails to appear . . . as required," and various State statutes carry similar language. See Annot., State statutes making default on bail a separate criminal offense, 63 A.L.R. 4th 1064 (1988). (Section 3150 has been replaced by 18 U.S.C. § 3146 [Supp. IV 1986] with a different text, see note 17 *infra*.)

in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited." *Colten* v. *Kentucky*, 407 U.S. 104, 110 (1972). A statute is not vague in the outlawed constitutional sense "if it requires a person to conform his conduct to an imprecise but comprehensible normative standard . . . ." *Commonwealth* v. *Williams*, 395 Mass. at 304, quoting from *Commonwealth* v. *Orlando*, 371 Mass. 732, 734 (1977). Such a standard is not impermissibly vague even though reasonable minds might differ whether particular conduct at the periphery of the "core" comports with it: the jury decide the question under instructions, as they do in easier cases to which the standard speaks more clearly. See *Hygrade Provision Co.* v. *Sherman*, 266 U.S. 497, 502 (1925). Cf. *Robinson* v. *United States*, 324 U.S. 282, 283, 285-286 (1945). The present defendant, in reason, could apprehend within rough bounds where his duty lay, and these would correspond with the scope of the statute as described by the judge.[11] Law enforcement officials would similarly understand what conduct was proscribed.[12]

We are fortified in our view that the present statute is valid by the fact that statutes in the same or a comparable sense have been long on the books and enforced without serious criticism on supposed vagueness grounds. Cf. *People* v. *Garcia*, 698 P.2d 801, 808 (Colo. 1985); *State* v. *Vogel*, 315 N.W.2d 324, 326-327 (S. Dak. 1982). The defendant points to a decision by the Washington Supreme Court, *State* v. *Hilt*, 99 Wash.2d 452 (1983), invalidating a bail-jumping statute which used the expression "knowingly fails without lawful

---

[11] It is perhaps worth noting here that a requirement of scienter, implicit in our statute, has a tendency to narrow (and thus to clarify) the scope of a criminal enactment. See *United States* v. *DePugh*, 434 F.2d 548, 551 (8th Cir. 1970), cert. denied, 401 U.S. 978 (1971), where "willful" in 18 U.S.C. § 3150 (1982) (see note 10) was thought to narrow the expression "as required" (which had been attacked as too vague) and to cure it of any ambiguity.

[12] We are told that today's emphasis in vagueness doctrine is to provide minimum guidelines to govern law enforcement. See *Kolender* v. *Lawson*, 461 U.S. at 357-358; *Commonwealth* v. *Williams*, 395 Mass. at 306.

excuse to appear as required." The court may have thought that "lawful excuse" invoked some arcanum of lawyers' technicalities and thus might mislead defendants and law enforcers. See *id.* at 455. That apart, the Washington court in its opinion appeared (without assigning a reason) to consider the statute on its face rather than in context.[13] And the court remarked on the possible unconstitutionality of the further provision of the statute: "Unless otherwise established, the failure to appear when required shall be inferred to have been without lawful excuse." Some recent decisions of the Washington courts suggest that *Hilt* itself may be losing strength as a precedent.[14] It is noteworthy that the Model Penal Code's bail-jumping provision, § 242.8, uses the very expression "without lawful excuse."[15] The commentary indicates that the provision "obviously" exempts cases where appearance was prevented by accident, illness, and the like, but that the full range of excuses valid in particular circumstances cannot be identified in advance and are left to case-by-case adjudication. Model Penal Code and Commentaries § 242.8 comment 3, at 284 (1980).

2. The defendant sought to avail himself of an excuse — that he was overborne by his belief that the breaking-and-entering trial was unfair to him. This had some resemblance to a claim of "duress," as the judge suggested, or, perhaps, of "necessity" (related to the idea of "competing harms"[16]). If

---

[13] The *Hilt* decision relied on the previous decision in *State* v. *White*, 97 Wash.2d 92, 95-101 (1982). In that case, however, First Amendment communication values were involved. (The statute dealt with obstructing a public servant by failing without lawful excuse to provide true information lawfully required by him.)

[14] See *State* v. *Maciolek*, 101 Wash.2d 259 (1984); *State* v. *Aver*, 109 Wash.2d 303, 306-309 (1987); *State* v. *Smith*, 111 Wash.2d 1 (1988); *State* v. *Plewak*, 46 Wash. App. 757, 759-763 (1987).

[15] "A person set at liberty by court order, with or without bail, upon condition that he will subsequently appear at a specified time and place, commits a misdemeanor if, without lawful excuse, he fails to appear at that time and place. . . ." Model Penal Code § 242.8 (1962).

[16] As to competing harms, see *Commonwealth* v. *Hood*, 389 Mass. 581, 590 (1983).

analogy to either of these justifications is followed, then the defendant herein would have the burden of producing some evidence of a "sufficient excuse" before the Commonwealth would become obligated to shoulder the burden of negating that excuse by proof beyond a reasonable doubt. As to "necessity," the court said in *Commonwealth* v. *Thurber*, 383 Mass. 328, 331 (1981): "The question of necessity is fairly raised only if there is evidence that would warrant a reasonable doubt whether the escape was justified by necessity. . . . Once the question is fairly raised, the teaching of our cases on matters of justification, mitigation and excuse is that the burden is on the Commonwealth to prove absence of justification beyond a reasonable doubt." See also *Commonwealth* v. *Hood*, 389 Mass. 581, 594 (1983); *Commonwealth* v. *Brugmann*, 13 Mass. App. Ct. 373, 379 (1982); *Commonwealth* v. *O'Malley*, 14 Mass. App. Ct. 314, 319 (1982). The same holds for a justification of duress. See *Commonwealth* v. *Robinson*, 382 Mass. 189, 198-209 (1981); *Commonwealth* v. *Melzer*, 14 Mass. App. Ct. 174, 183 & n.6 (1982); *United States* v. *Mitchell*, 725 F.2d 832, 834-837 (2d Cir. 1983). Beyond the analogical force of these precedents in indicating how a proffered excuse under the bail-jumping statute should be treated at trial, we have the commonsense point that it is the defendant charged under the statute who in all likelihood knows the relevant facts, and there is no unfairness in requiring him to produce some evidence of them.[17]

To turn to the present case, the Commonwealth was not required to establish in its case-in-chief that the defendant acted

---

[17] In the present Federal statute on bail-jumping, 18 U.S.C. § 3146 (Supp. IV 1986), "uncontrollable circumstances" preventing a person from appearing are labeled an "affirmative defense," 18 U.S.C § 3146(*c*) (Supp. IV 1986), which may mean that the defendant bears the full burden. The constitutional validity of so casting the burden need not be considered here. See *Robinson* v. *Callahan*, 694 F.2d 6, 7 & n.1 (1st Cir. 1982) (this is *Commonwealth* v. *Robinson*, 382 Mass. 189, on habeas review), and *Martin* v. *Ohio*, 480 U.S. 228 (1987) (5-4 decision) (upholds State practice of requiring the defendant to prove self-defense).

without sufficient excuse.[18] Thus a defendant's motion for a required finding at that stage (or as later repeated) would properly have been denied; and the judge in his memorandum on the postconviction application said he would have denied it. The defendant on his side attempted to offer evidence of a sufficient excuse. It is very doubtful that his effort amounted even to a "production" in the sense of the *Thurber* case, 383 Mass. at 331, for it would be properly held under the present statute (correctly defined in the judge's instruction), as has been observed under other bail-jumping statutes, that fear of an unfair trial does not justify flight, see *Beasley* v. *Commonwealth,* 618 S.W.2d 179, 180-181 (Ky. Ct. App. 1981), any more than fear of deportation, see *United States* v. *Odufowora,* 814 F.2d 73, 74-75 (1st Cir. 1987), or fear of harm if incarcerated, see *People* v. *Turner,* 57 Ill. App.3d 62, 66 (1978). Thus the trial judge might well have declined to instruct on sufficient excuse. Cf. *Commonwealth* v. *Grant,* 391 Mass. 645, 651 (1984). The defendant got more than he deserved when the judge did charge on the matter and assigned the burden of persuasion to the Commonwealth. The verdict was just.

*Judgment affirmed.*

*Order denying motion for postconviction relief affirmed.*

---

[18] It can make no difference that the Commonwealth, having Lieutenant Whalen on the stand, was evidently intending to prove through him the absence of sufficient excuse. In fact Whalen was cut off before he could testify on that line.