FILED

03/24/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0013

DA 24-0013

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 59

STATE OF MONTANA,

        Plaintiff and Appellee,

  v.

MICHAEL ROSS TROMBLEY,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Twentieth Judicial District,
In and For the County of Lake, Cause No. DC-23-65
Honorable Deborah Kim Christopher, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Tammy A. Hinderman, Appellate Defender Division Administrator,
Emma N. Sauve, Assistant Appellate Defender, Helena, Montana

        For Appellee:

            Austin Knudsen, Montana Attorney General, Cori Losing, Assistant
Attorney General, Helena, Montana

            James Lapotka, Lake County Attorney, Benjamin Anciaux, Deputy
County Attorney, Polson, Montana

                Submitted on Briefs:  December 17, 2025

                      Decided:  March 24, 2026

Filed:

                _____
                            Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Michael Ross Trombley (Trombley) appeals from the denial of his motion to dismiss and the subsequent written judgment entered against him finding him guilty of Bail Jumping, a felony in violation of § 45-7-308, MCA, entered in the Twentieth Judicial District Court, Lake County, on November 9, 2023. Trombley contends that § 45-7-308, MCA, is unconstitutionally vague and that the State failed to allege sufficient facts to establish probable cause that Trombley had committed Bail Jumping when the State did not allege any facts to show that Trombley did not have a "lawful excuse" when he failed to appear at the court date he was ordered to attend. We affirm.

¶2 We restate the issues on appeal as follows:

1. *Whether Montana's offense of Bail Jumping, codified at § 45-7-308, MCA, is unconstitutionally vague.*

2. *Whether the State alleged sufficient facts to establish probable cause for the offense of Bail Jumping when it did not allege any facts to show that Trombley did not have a "lawful excuse" not to appear at the court hearing he was ordered to attend.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 On January 19, 2023, Trombley appeared before the District Court on a Petition to Revoke Probation for an unrelated felony. The District Court released Trombley from custody on the condition that he appear for an Adjudicatory Hearing on February 16, 2023. Trombley failed to appear at this hearing. The State filed an Information on February 21, 2023, charging Trombley with Bail Jumping, alleging that:

On or about the 16th day of February, 2023 at 9:00 a.m., in Lake County, Montana, the Defendant MICHAEL ROSS TROMBLEY, having been set at liberty with security by court order, in proceedings involving felony criminal

2

charges, upon the condition that he would subsequently appear for the adjudicatory hearing on the 16th day of February, 2023 at 9:00 a.m. in the District Courtroom, Lake County Courthouse, Polson, Montana, purposely failed, without lawful excuse, to appear at that time and place.

The District Court issued a warrant for Trombley's arrest. Officers arrested Trombley on May 4, 2023, approximately ten weeks after the State filed its Information charging Trombley with Bail Jumping. Trombley appeared before the District Court and entered a plea of not guilty.

¶4     Trombley subsequently filed a motion to dismiss on July 25, 2023. In his motion to dismiss, Trombley argued that the State failed to allege any facts to show that Trombley purposely tried to miss his court appearance and that any number of reasons, such as illness or transportation issues, could have prevented him from appearing at his court hearing. Trombley further asserted that the State had failed to allege sufficient probable cause since the clerk of court, who swore an affidavit in support of the Information, lacked personal knowledge as to Trombley's reasons for failing to appear at his court hearing. Lastly, Trombley argued that § 45-7-308, MCA, is void for vagueness in the absence of a statutory definition of "lawful excuse" and further impermissibly shifts the burden of proof onto a criminal defendant who has no obligation to speak and would be forced to guess at what would constitute a "lawful excuse." After briefing and oral argument, the District Court denied Trombley's motion to dismiss on September 11, 2023.

¶5     Trombley entered into a global plea agreement whereby one of the charges he pleaded to was Bail Jumping, reserving his right to appeal the denial of his motion to dismiss. On September 21, 2023, Trombley admitted to the facts constituting the elements

3

of Bail Jumping, affirming that he failed to appear at his scheduled court hearing and that he did not have a lawful excuse. The District Court sentenced Trombley to two years incarceration at Montana State Prison in the instant case to run consecutively with his sentences for the other offenses.

## STANDARDS OF REVIEW

¶6 "Whether a statute is constitutional is a question of law" and we therefore "review a district court's application of the Constitution to determine if it is correct." *State v. Stanko*, 1998 MT 321, ¶ 14, 292 Mont. 192, 974 P.2d 1132. We begin our analysis with a presumption that a challenged statute is constitutional. *State v. Thirteenth Jud. Dist. Ct.*, 2009 MT 163, ¶ 23, 350 Mont. 465, 208 P.3d 408; *State v. Knudson*, 2007 MT 324, ¶ 12, 340 Mont. 167, 174 P.3d 469. "The person challenging a statute's constitutionality bears the burden of proving it unconstitutional beyond a reasonable doubt." *Knudson*, ¶ 12; *see also Thirteenth Jud. Dist. Ct.*, ¶ 23. Where possible, it is the duty of courts to construe statutes to avoid an unconstitutional interpretation. *Thirteenth Jud. Dist. Ct.*, ¶ 23; *Stanko*, ¶ 15.

¶7 Finally, we apply the de novo standard of review to mixed questions of law and fact involving a motion to dismiss for lack of probable cause. *State v. Giffin*, 2021 MT 190, ¶ 11, 405 Mont. 78, 491 P.3d 1288 (citations omitted).

## DISCUSSION

¶8 *1. Whether Montana's offense of Bail Jumping, codified at § 45-7-308, MCA, is unconstitutionally vague.*

¶9      Both the United States Constitution and the Montana Constitution provide that the State shall not deprive a person of life, liberty, or property without due process of law. U.S. Const. amend. XIV; Mont. Const. art. II, § 17.  Essential to due process is that "an enactment is void for vagueness if its prohibitions are not clearly defined."  *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S. Ct. 2294, 2298 (1972); *see also Knudson*, ¶ 18. The doctrine of void for vagueness serves two critical principles.  First, laws must give a person of ordinary intelligence notice of what conduct is prohibited so that person may conform his or her conduct to the law.  *State v. Dixon*, 2000 MT 82, ¶ 28, 299 Mont. 165, 998 P.2d 544; *Greyned*, 408 U.S. at 108, 92 S. Ct. at 2298-99.  "Vague laws may trap the innocent by not providing fair warning."  *State v. Dugan*, 2013 MT 38, ¶ 66, 369 Mont. 39, 303 P.3d 755 (citations omitted). Second, to prevent arbitrary and discriminatory enforcement, laws must provide explicit standards for those who apply them because a vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.  *Dugan*, ¶ 66 (citations omitted).  This second principle—to prevent arbitrary and discriminatory enforcement—is the most important concern when determining whether a law is void for vagueness.  *Stanko*, ¶ 21 (quoting *Kolender v. Lawson*, 461 U.S. 352, 357-58, 103 S. Ct. 1855, 1858 (1983)).  Thus, we apply a two-part test when examining whether a statute is void for vagueness: (1) whether the statute

5

provides fair notice of what conduct is prohibited[1] and (2) whether the statute provides minimal guidelines sufficient to govern enforcement. *Knudson*, ¶ 19 (citing *Dixon*, ¶ 27).

¶10     A statute may be challenged as unconstitutionally vague on two different grounds: "(1) because the statute is so vague that it is rendered void on its face; or (2) because it is vague as applied in a particular situation." *Thirteenth Jud. Dist. Ct.*, ¶ 24. "A statute is void on its face 'if it fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden.'" *Dugan*, ¶ 25 (quoting *State v. Nye*, 283 Mont. 505, 513, 943 P.2d 96, 101 (1997)). The omission of exhaustive definitions of every term employed in a statute does not render it automatically vague where the meaning of the statute is clear and it provides sufficient notice to a defendant of what conduct is prohibited. *Dugan*, ¶ 69. Where a challenged statute is "reasonably clear in its application to the conduct of the person bringing the challenge, it cannot be stricken for vagueness." *Dugan*, ¶ 20 (citations omitted). In other words, "[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Dixon*, ¶ 18 (quoting *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 495, 102 S. Ct. 1186, 1191 (1982)). "The requirement of a mental state to do a prohibited act can render an otherwise vague or indefinite statute constitutional." *Dugan*, ¶ 70. In an as-applied challenge, the statute is examined "in light of the conduct with which

---

[1] Our case law, borrowing language from *Kolender* has used the term "actual notice," however it is clear that "actual notice," as that term is traditionally understood, is not required to bring a void for vagueness challenge. *See Stanko*, ¶ 21; *Dixon*, ¶ 27; *Knudson*, ¶ 19; *Dugan*, ¶ 67.

the defendant is charged in order to determine whether the defendant could have reasonably understood that his conduct is proscribed." *Knudson*, ¶ 21 (quoting *Dixon*, ¶ 28).

¶11 We now turn to Trombley's as-applied challenge to Montana's bail-jumping statute. Trombley argues that the requirement that he provide a "lawful excuse" for his failure to appear at a specified time and place impermissibly shifts the burden of proof from the State to the defendant—that it is the State's burden to prove that he did not have a lawful excuse. He further asserts that, given the purported indefiniteness of the statute, he would have risked self-incrimination by offering an excuse since he would have had to guess at what would constitute a lawful excuse. The State answers that Trombley lacks standing to bring an as-applied challenge because his conduct clearly falls within the scope of the bail-jumping statute since he was set at liberty by the District Court and ordered to appear on a specified time and place and did not appear. The State further argues that even if Trombley had sought to explain his non-appearance to the District Court, at that point he, regardless of his excuse, had already failed to appear and thus had an incentive to offer some justification in his defense.

¶12 Section 45-7-308, MCA, provides: "[a] person commits the offense of bail-jumping if, having been set at liberty by court order, with or without security, upon condition that the person will subsequently appear at a specified time and place, the person purposely fails without lawful excuse to appear at that time and place." Trombley points this Court to a decision by the Washington Supreme Court in *State v. Hilt*, 662 P.2d 52 (Wash. 1983), which found that its state's bail-jumping statute, which included the phrase "without lawful excuse," was unconstitutionally vague. There, the Court understood "without lawful

7

excuse" to be one of three elements to Bail Jumping. *Hilt*, 662 P.2d at 52. The Court drew from a line of cases finding similar phrases to be unconstitutionally vague and held that, "[t]he bail jumping statute is equally deficient in terms of providing guidelines to the meaning of lawful excuse." *Hilt*, 662 P.2d at 53. Thus, "predicting its potential application would be a guess, at best." *Hilt*, 662 P.2d at 53. The Washington Supreme Court later clarified that the concept of "lawfulness" is not inherently unconstitutionally vague. *State v. Smith*, 759 P.2d 372, 375 (Wash. 1988).

¶13    Conversely, the Massachusetts Appeals Court came to a different conclusion when examining its statute for Bail Jumping which provides that a person "who fails without sufficient excuse to so appear shall be punished[.]" *Commonwealth v. Love*, 530 N.E.2d 176, 177 (Mass. App. Ct. 1988). In *Love*, the Massachusetts court observed "the vagueness doctrine 'is not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited.'" *Love*, 530 N.E.2d at 179 (quoting *Colten v. Kentucky*, 407 U.S. 104, 110, 92 S. Ct. 1953, 1957 (1972)). Regarding the first element in a vagueness challenge—fair notice to the defendant—the court reasoned that its own statute, like many other jurisdictions, required a "willful" failure to appear and that the "present defendant, in reason, could apprehend within rough bounds where his duty lay, and these would correspond with the scope of the statute as described by the judge." *Love*, 530 N.E.2d at 179-80. Concerning the second element—minimal guidelines sufficient to govern enforcement—the court observed that "[s]uch a standard is not impermissibly vague even

though reasonable minds might differ whether particular conduct at the periphery of the 'core' comports with it: the jury decide the question under instructions, as they do in easier cases to which the standard speaks more clearly."[2] *Love*, 530 N.E.2d at 179. Upon noting that the decision in *Hilt* "may be losing strength in precedent" in light of more recent cases, the Massachusetts court further observed that "[i]t is noteworthy that the Model Penal Code's bail-jumping provision, § 242.8, uses the very expression 'without lawful excuse.'" *Love*, 530 N.E.2d at 180 (quoting Model Penal Code § 242.8 (Am. L. Inst. 1962)); *see Love*, 530 N.E.2d at 180, n.14 (collecting Washington Supreme Court cases). Indeed, Montana's criminal code is based on a modified version of the Model Penal Code. *State v. Mills*, 2018 MT 254, ¶ 19, 393 Mont. 121, 428 P.3d 834.

¶14 The Model Penal Code and Commentaries on Bail Jumping and Burden of Proof provide helpful insight into the meaning and purpose of Montana's bail-jumping statute. The purpose of the bail-jumping statute "is to deter those who would obstruct justice by failure to appear for trial or service of sentence." Model Penal Code § 242.8, cmt. 2 (Am. L. Inst. 1980). The provision "without lawful excuse" is "designed to give indeterminate scope to the kinds of excuses for non-appearance that the courts may choose to adopt." Model Penal Code § 242.8, cmt. 4. Circumstances causing a defendant's non-appearance, such as accident, illness, and the like, are "[o]bviously" exempt from liability, yet "the full range of excuses that might be judged valid in one or another circumstance is impossible

---

[2] The trial court instructed the jury that examples of sufficient excuses included "serious illness, accident, confinement as by kidnapping" and examples of insufficient excuses included "simple refusal to face responsibility, simple intent to escape punishment for wrongdoing or to frustrate justice." *Love*, 530 N.E.2d at 178 n.5.

to identify in advance." Model Penal Code § 242.8, cmt. 3. An affirmative defense is one which "involves a matter of excuse or justification peculiarly within the knowledge of the defendant on which he can fairly be required to adduce supporting evidence." Model Penal Code § 1.12(3)(c) (Am. L. Inst. 1985).[3] The initial burden of showing an affirmative defense lies with the defendant and the prosecution does not have a duty to negate such a defense unless and until supporting evidence is adduced by the defendant. Model Penal Code § 1.12, cmt. 3. Any affirmative defense which a defendant must prove by a preponderance of the evidence "must plainly appear." Model Penal Code § 1.12, Explanatory Note (internal quotations omitted). Absent such a plain indication that an affirmative defense must be proven by a preponderance of the evidence, "[i]t should suffice to put the prosecution to its proof that the defendant shows enough to justify a reasonable doubt on the issue." Model Penal Code § 1.12, cmt. 3. The American Law Institute did not think it was inherently unfair that an affirmative defense may impose pressure upon a defendant to testify. Model Penal Code § 1.12, cmt. 4; *see also Barnes v. United States*, 412 U.S. 837, 847, 93 S. Ct. 2357, 2362 (1973) ("Introduction of any evidence, direct or circumstantial, tending to implicate the defendant in the alleged crime increases the pressure on him to testify. The mere massing of evidence against a defendant cannot be regarded as a violation of his privilege against self-incrimination."); *State v. Emmons*, 936 A.2d 459, 464 (N.J. Super. Ct. App. Div. 2007) ("The determination whether to present

---

[3] In contrast to the Model Penal Code, South Dakota's bail-jumping statute, for example, is a strict liability offense. *State v. Vogel*, 315 N.W.2d 324, 326 (S.D. 1982) (citing S.D. Codified Laws § 23A-43-31).

10

exculpatory evidence [in defense of Bail Jumping] is simply part of the defense's strategic decision-making process that occurs in any criminal case."). We now apply this Court's two-part void for vagueness inquiry to the bail-jumping statute and inquire into whether it provides fair notice to a defendant and minimal guidelines sufficient to govern law enforcement. *Knudson*, ¶ 19 (citation omitted).

¶15    Here, Trombley was set at liberty by the District Court under the condition that he appear at his Adjudicatory Hearing on February 16, 2023. He failed to appear at the time and place specified by the District Court. A person of ordinary intelligence in Trombley's circumstances would have had fair notice that he was required by law to attend this hearing and that a failure to do so could result in criminal penalties. If Trombley had some compelling reason for failing to appear, such as an illness, accident, or the like, he would have had a strong incentive to disclose that reason to the District Court. Instead, the record does not show any communications from Trombley about his whereabouts during the approximately ten-week period between his Adjudicatory Hearing and his arrest on May 4, 2023. Such an extended period of absence from his criminal proceedings evidences a purpose to "obstruct justice by failure to appear for trial or service of sentence." Model Penal Code § 242.8, cmt. 2.

¶16    The provision "without lawful excuse" clearly provided Trombley an opportunity to raise an affirmative defense, for which he carried the initial burden of production, to his failure to appear at his hearing. The decision of whether or not to take advantage of the opportunity to raise a lawful excuse as an affirmative defense did not force Trombley to incriminate himself, but, rather, was "simply part of the defense's strategic

11

decision-making process that occurs in any criminal case." *Emmons*, 936 A.2d at 464. Trombley's argument that he would have risked self-incrimination since he would have had to guess what constitutes a lawful excuse is without merit because it presupposes that he had an array of mutually exclusive reasons for his failure to appear on February 16, 2023, but he had to choose only one. Had Trombley met his burden of production and adduced some supporting evidence that he did have a lawful excuse, it would have been the State's burden to prove to a jury beyond a reasonable doubt that he did not have a lawful excuse. To be sure, individual jurors may have differed in their appraisal of whether Trombley did not have a lawful excuse for his failure to appear. However, the statute's mental state element of "purposely" mitigates any vagueness concerns as it required proof beyond a reasonable doubt that it was Trombley's conscious object to fail to appear on February 16, 2023, not that circumstances beyond his control prevented him from attending his Adjudicatory Hearing. *See* § 45-2-101(65), MCA, (defining "purposely"); *Dugan*, ¶ 70. The State's burden of proving beyond a reasonable doubt to a unanimous jury that Trombley was set at liberty by a court order and purposely failed to appear on February 16, 2023, without a lawful excuse mitigates any concern as to whether § 45-7-308, MCA, provides minimal guidelines sufficient to govern law enforcement. Since the bail-jumping statute is reasonably clear in its application to Trombley's conduct during the ten-week period where he absconded from justice, we conclude § 45-7-308, MCA, cannot be stricken for vagueness. *Dugan*, ¶ 70. Thus, Trombley's as-applied challenge fails. Because Trombley has engaged in the proscribed conduct, he cannot complain that the law is

12

facially vague as applied to others. Trombley's facial challenge therefore fails as well. *Dugan*, ¶ 70.

¶17 Accordingly, the District Court did not err when it denied Trombley's motion to dismiss because § 45-7-308, MCA, is not void for vagueness as applied to Trombley.

¶18 *2. Whether the State alleged sufficient facts to establish probable cause for the offense of Bail Jumping when it did not allege any facts to show that Trombley did not have a "lawful excuse" not to appear at the court hearing he was ordered to attend.*

¶19 Trombley asserts that "without lawful excuse" is one of three elements to the bail-jumping statute and therefore the State had the burden of alleging facts to make it probable that Trombley did not have a "lawful excuse." Trombley reasons that because the Legislature did not explicitly define "lawful excuse" as an affirmative defense, as it has done with affirmative defenses in other parts of the criminal code, it must be a necessary element. Thus, he asserts, the State had the burden of alleging facts to indicate that Trombley did not have a lawful excuse for his failure to appear at his hearing. The State responds that the charging Information apprised Trombley of the charge against him and the facts in support of the bail-jumping offense, and that Trombley's mental state was properly a question for the jury to determine. The State likens "lawful excuse" to an affirmative defense to which Trombley had a significant interest in presenting evidence that he did have a lawful excuse when he failed to appear at his hearing. We agree with the State.

¶20 The requirements for the filing of an information and the supporting affidavit are governed by statute and set forth in § 46-11-201, MCA, which provides:

13

> (1) The prosecutor may apply directly to the district court for permission to file an information against a named defendant . . . .
>
> (2) An application must be by affidavit supported by evidence that the judge . . . may require. If it appears that there is probable cause to believe that an offense has been committed by the defendant, the judge . . . shall grant leave to file the information, otherwise the application is denied.

*Giffin*, ¶ 14. A court determines the sufficiency of the charging documents "by reading the information together with the affidavit in support of the motion to file the information." *Giffin*, ¶ 15 (quoting *State v. Elliot*, 2002 MT 26, ¶ 26, 308 Mont. 227, 43 P.3d 279). The evidentiary threshold for establishing probable cause is lower than the evidence necessary to establish that a person is guilty of a particular offense. *Giffin*, ¶ 15. "The supporting affidavit does not have to make out a prima facie case the defendant committed an offense; rather, a probability that the defendant committed the offense is sufficient." *Giffin*, ¶ 15. However, the charging documents "must reasonably apprise the accused of the charges against him to enable him an opportunity to prepare a defense." *Giffin*, ¶ 15. Upon a court's finding of probable cause, whether a defendant had the requisite mental state is a question of fact for the jury. *State v. Tichenor*, 2002 MT 311, ¶ 21, 313 Mont. 95, 60 P.3d 454.

¶21 Here, the Affidavit and the Information charging Trombley with Bail Jumping supported the District Court's finding that the State had probable cause. The charging documents identified the time and place that Trombley was ordered to appear, that he had been set at liberty upon the condition of his appearance at such a time and place in a felony proceeding, that he had purposely failed to appear without a lawful excuse, and that as of

14

the time of the Information he had not appeared or given a lawful excuse for his failure to appear. These allegations established that it was probable that Trombley committed the offense of Bail Jumping, reasonably apprised Trombley of the charge against him, and provided him with sufficient opportunity to prepare a defense. Trombley's argument that because the Legislature did not explicitly identify "lawful excuse" as an affirmative defense as it has done elsewhere in the criminal code elevates form over substance. *See* §§ 45-2-211 (consent); -212 (compulsion); -213 (entrapment), MCA. As the American Law Institute explains, "it is desirable that, so far as possible, such [affirmative] defenses be identified specifically by the legislature." Model Penal Code § 1.12, cmt. 4. "It is, however, clear that as a drafting matter it is less than feasible to make the designation in all situations where casting an evidential burden on defendants would promote the fair administration of the penal law and raise no constitutional objection." Model Penal Code § 1.12, cmt. 4. Trombley's reason for not appearing at his Adjudicatory Hearing is peculiarly within his own knowledge: he could fairly have been required to adduce evidence in support of this affirmative defense, but he chose not to do so. Model Penal Code § 1.12(3)(c). We find it difficult to conceive how the State could even allege facts to establish whether an exception to the bail-jumping statute did *not* exist." The State is not required to negate any statutory exception to an offense in its indictment, information, or complaint. Model Penal Code § 1.12, cmt. 3, n.16. Section 45-7-308, MCA, does not "require the disproof of an affirmative defense unless and until there is evidence supporting" an affirmative defense that Trombley had a lawful excuse not to appear at his court hearing. Model Penal Code § 1.12(2)(a).

15

¶22 Accordingly, the District Court correctly denied Trombley's motion to dismiss because the State alleged sufficient facts to establish probable cause that Trombley committed the offense of Bail Jumping.

## CONCLUSION

¶23 Section 45-7-308, MCA, is reasonably clear in its application to the conduct of Trombley, who was released by the District Court upon the condition that he appear at his court hearing on February 16, 2023, but failed to do so and was arrested on a warrant for Bail Jumping nearly ten weeks later on May 4, 2023 and, therefore, it cannot be stricken for vagueness. The State is not required to allege facts which would negate the existence of an excuse when charging a person with the offense of Bail Jumping in an information and supporting affidavit.

¶24 Affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ CORY J. SWANSON
/S/ KATHERINE M. BIDEGARAY
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ INGRID GUSTAFSON
/S/ JIM RICE